. ZUNDELL & CO. V. RUDOLPH GESS.

No. 2401.

1. **Resulting Trust—Alien.**—It seems that a resulting trust in real estate will not be raised in favor of an alien whose money may be traced into such land.

2. **Same—Lien.**—It seems that upon an alien tracing his funds into a tract of land that he would be entitled to a money judgment against the party using his funds in the purchase and would have a lien upon the land which the courts will foreclose.

3. **Same—Certainty—Presumption.**—Where the owner of a' fund by his own want of care transmitted money in a draft to an innocent party in excess of the amount intended, and the money was spent, no presumption will apply to the acts of the innocent receiver in favor of the careless sender of the money.

4. **Same.**—To establish a lien upon a tract of land under such circumstances it would require satisfactory proof of the application of the funds so received and used by mistake to the purchase and the amount so used.

5. **Same—Separate Money of Wife—Homestead.**—Where such funds were used jointly with separate money of the wife in the purchase of a homestead a lien will not be established.

APPEAL from Cooke.  Tried below before Hon. F. E. Piner.

The opinion states the case.

*Potter & Hughes,* for appellants. — 1. The court erred in holding that an alien by reason of that fact could not foreclose a valid lien on land in Texas to satisfy a moneyed demand regardless of whether the lien was a legal or equitable one.  2 Kent's Com., 25; Hughes v. Edwards, 9 Wheat., 489; Craig v. Leslie, 3 Wheat., 563; Anstice v. Brown, 6 Paige, 453; Taylor v. Carpenter, 2 Woodb. & M., 1; Coffin v. Bunton, 4 McLean, 516; Wallace v. Duffield, 2 Serg. & Rawls, 529; Wallace v. McCullough, 1 Rich. Ch., 426.

.2.  A constructive or resulting trust will in effect be declared in favor of an alien when the same has not been operated by such alien with the purpose of benefiting himself in violation of law, or where it is necessary for the protection of such alien and to prevent a wrong.  Anstice v. Brown, 6 Paige, 453, where it is said that the proper course would be to order sale of the land and compel the holder of the legal title to execute a conveyance, etc.

3.  Appellee having invested money that did not belong to him (but was the property of the appellants, having come into possession of appellee through mistake) in the property in controversy, it was error to hold that appellants had no rights.  2 Pom. Eq. Jur., sec. 1047; Id., secs. 1051, 1044; Com. Dig. Ch., 2; 2 Fonbl. Eq., sec. 1, note b; 1 Perry on Trusts, sec. 184.

4.  The court having found as matter of fact that some of the plaintiffs' money went into the land sued for, it was error not to hold appellee responsible because he claimed to be unable to tell the exact amount, and thereby profit by his fraudulent mixing of the money.  Such seems

to be the rule held in United States v. Waterborough, Davies, 154; Geopp's Appeal, 3 Harris, 428.   Especially see Russell v. Jackson, 10 Hare, 209; McLaren v. Brewer, 51 Me., 402; Seaman v. Cook, 14 Ill., 505; Farmer's Bank v. King, 57 Pa. St., 202, and many other cases.   But this case may be justly stated much stronger than those cited.   To say the least, appellee was willfully negligent in not reading the statement that accompanied the draft and in not discovering the mistake and remedying it.   We think the record warrants us in saying that he did discover the mistake, and that he destroyed the statement showing the same and drew the money and left the country until he thought the matter had been overlooked, and then returned and invested the money in a homestead, for the fraudulent purpose of defeating appellants.   1 Perry on Trust, sec. 128, ed. 1874.

5.   The court erred in holding that an alien could not recover land in Texas from a wrongdoer upon his defeasible title held by such alien. Phillips v. Moore, 100 U. S. Rep., 208; Jones et al. v. McMasters, 20 How., 20; Taylor v. Bonham, 5 How., 271; Barrett v. Kelley, 31 Texas, 480; Lee v. Salinas, 15 Texas, 495; Hanrick v. Hanrick, 54 Texas, 102; 2 Kent's Com., 23.

*Davis & Garrett,* for appellee. — 1.   It being unlawful for an alien to purchase land in this State, equity will not raise a resulting or constructive trust in favor of an alien.   Rev. Stats., art. 10; White v. Sabariego, 23 Texas, 243; 1 Perry on Trusts, sec. 131.

2.   The funds having been negligently commingled by appellants and not by appellee, and there being no trust or fiduciary relationship existing between the parties, equity will not raise a resulting trust in favor of appellants, and will certainly not forfeit appellee's property because he can not separate the funds which has been negligently commingled by appellants and which he honestly believes to be his own.   1 Perry on Trusts, sec. 128; Campbell v. Drake, 4 Ired., 94; Bank v. Hunt, 3 Edw., 583; Hawthorne v. Brown, 3 Sneed, 462; Ensley v. Ballantine, 4 Humph., 233.

3.   On motion for rehearing.   (1) On question of the trust.   4 Wait's Act. and Def., 476; 2 Pomeroy's Eq., sec. 339; Perry on Trusts, sec. 128. (2) The testimony is insufficient.   Cunio v. Bourland, 1 Posey's U. C., 471; Cuney v. Dupree, 21 Texas, 219; Johnson v. Deloney, 35 Texas, 46.

STAYTON, CHIEF JUSTICE.—The judgment in this cause was reversed and rendered in favor of appellants during the Tyler Term of this court and it is now before us on motion for rehearing.

The facts in substance are, that appellee having in the hands of his guardian in Switzerland 2043.95 francs, ignorant, however, of the amount, desired this sent to him in Texas.   His guardian purchased from Zun-

dell & Co., bankers in Switzerland, a draft on New York as a means for sending the money, or deposited it with them to be sent. By mistake made in reducing francs to dollars of United States coinage the bankers instead of sending a draft for $389.32, the true value of the 2043.95 francs delivered to them by the guardian of appellee, made out and sent to him a draft for $1073.06, which he collected in ignorance that it was more than he was entitled to receive from his guardian.

At the time appellee received this money from the bank that collected the draft sent to him from appellants he had $375 otherwise acquired, which he placed with that received on the draft. After this he made a visit north and spent some money, but the amount spent is not shown. On his return to Texas he married and purchased a home in Gainesville, for which he paid $600, and in the improvement of this he subsequently expended $150.

In the former disposition of this cause it was thought that the evidence required a holding that the home and improvements made thereon were paid for with the remainder of the mixed fund held by appellee when he started on his visit north, and under that view of the facts it was held that while the alienage of appellants would forbid the enforcement of a constructive trust through which appellants might assert ownership in the specific property bought with that fund, yet that they might by reason of the facts have and enforce a lien on the property bought to secure the payment of the sum due from appellee to them, and judgment was so entered.

To entitle appellants to this relief it is necessary that they shall have traced their money into the property against which the claim is asserted; for if this be not done it can not be held that one who knowingly or ignorantly receives the money of another and expends it in the payment of debts or otherwise, thereby creates a lien on any or all of his property or confers upon the person whose money is so used any right other than that held by ordinary creditors.

It seems impossible for appellants to show that $683.74 of the money collected on the draft sent by them to appellee or the representative of this was actually used in the purchase and improvement of the property; for when appellant went north he had in his possession $1448.06, with no means so far as the record shows to distinguish that to which he was justly entitled from that received by him through mistake; and if it had been shown that all of this sum except $683.74 had been expended before he bought the home and improved it, and that this sum had been used for that purpose, even then the case of Bank v. Weems, 69 Texas, 489, would not furnish a precedent for holding that the sum so invested must be deemed to have been the money of appellants.

It may be justly held when a trustee knowingly or even negligently so mixes his own money with that of a person for whom he holds other

money in trust that the money of each can not be identified, and afterward expends in his own business a sum equal to his own, that the balance in hand is the money of the *certui que trust;* and so upon the presumption that the trustee acted honestly and expended in his own business or for his own purposes only what he had the right to so expend.

In such a case the burden of showing what is his and what he holds as trustee rests and ought to rest upon him, and if he fails to do this, as he ought to be able to do if he has discharged his duty, he can not complain if the presumption is indulged that he acted honestly and has on hand the identical money or the representative of that which it was his duty to have on hand.

Such a presumption may well be indulged when the trustee is shown to have been aware that he was in possession of money belonging to another which he had neither the legal nor moral right to retain or use. But ought such a presumption to be indulged when the person who is sought to be made liable to the rules applicable to trustees was ignorant at the time he used money justly belonging to another that such a state of facts existed as would impose upon him the relation of trustee for the person really entitled to the money?

We think in the case last supposed the reason for indulging in such a presumption as may be raised in a case in which a trustee knowing his relation to a trust fund mixes it with° his own money wholly fails, and that the presumption ought not to be raised in any case in which by the fault or negligence of the other party money comes into the hands of the person sought to be charged as a trustee under circumstances that induced him to believe it belonged to him when so believing he used it.

In such cases the use of a fund by a person innocent of any wrongful intent and ignorant of his want of right is influenced by the fault or negligence of the real owner, and no presumption of fact ought to be indulged against him which does not arise as a fair deduction from the known facts.

In this case it must be remembered that the funds were practically mixed by appellants, who placed their own in one draft with that to which appellee was entitled, and that they furnished him no means to ascertain that this had been done until after the entire fund had been expended.

The burden of proof to show that their money or some particular part of it went in payment for the property in question rests upon appellants, and this they must show with reasonable certainty before they become entitled to other relief than that given by the judgment of the court below.

It may be conceded that "whenever one party has obtained money which does not equitably belong to him and which he can not in good conscience retain or withhold from another who is beneficially entitled to it," a con-

structive trust will arise whether the money came to the possession of
such person by accident, mistake of fact, or fraud.    Pom. Eq., 1047.

To enforce this trust the money must be identified or it must be·
clearly traced into property purchased with it.

If this be done it is the right of the beneficiary to have the money or·
property bought with it, and this right he may enforce against the trustee
or any one holding under him who is not an innocent purchaser

If he does not desire to have the property bought with his money it is.
his right to have a personal judgment against the trustee with enforce-
ment of lien against the property to secure its payment.

It was held in the former opinion that while appellants, on account of·
their alienage, were not entitled to the property which they allege was.
bought with their money, yet that they were entitled to have it sold and
its proceeds applied in satisfaction of the personal judgment obtained.
against appellee.

Looking to the whole record, does it justify the conclusion reached on.
the former consideration of the case?

Appellants had in their hands a sum of money belonging to appellee,.
of a coinage presumably that of the country in which they lived, the·
value of which they are presumed to have known, which they as bankers.
undertook to reduce to American money and remit to appellee.    They·
made a mistake in doing this and sent a sum larger than they should
have sent, which appellee received in ignorance of the sum due to him
or that the sum received was more than he was entitled to.

If under this state of facts it were shown that the entire and identical
$1073.06 was invested in the property bought and improved by appellee,.
then we would be authorized to hold that appellants had shown that,
$683.74 of their money had been invested in the property, and it would
be their right to enforce its repayment through a sale of the property.
If, however, it was shown that of the identical money received by appel-
lee through the drafts sent to him by appellants $750 was invested in the·
purchase and improvement of the property, then under the facts of this
case a court would not be authorized to presume that to the extent of·
$683.74 this was money belonging to appellants, for there would be no
more reason for presuming this than that appellee thus used $389.72 of
that fund which rightfully belonged to him.

It appears, however, that at one time the mixed fund amounted to·
$1448.06, of which $764.32 justly belonged to appellee.    This was more·
than was expended by appellee in the purchase and improvement of the·
property, and we might as well presume under the facts of this case that
this was so used as to presume that appellee so used the money rightfully
belonging to appellants.

We think it does appear with reasonable certainty that appellee had
not in his hands at the.time he purchased the property of the mixed

fund amounting to $1448.06 a sum equal to $683.74, and it does clearly appear that $300 of the money actually paid for the property was the separate fund of the wife of appellee.

The property belongs to her in the proportion the money she paid bears to the entire purchase money, and this furnishes another reason why appellants should be held to clearly show that their money paid for the property, or to what extent it did so, for through their negligence there came into the hands of her husband money which he and she were authorized to believe belonged to him and thereby she was induced to join him in the purchase of the property by the use of that money and her separate means, expecting by the purchase to acquire a home from which she could not be excluded except through her own consent given as the law requires.

Had she known that the money of a third person was used to pay a part of the purchase money, and that by reason of this fact the property intended for a home would be subject to sale to repay the sum so used, the probability is that she never would have invested her money in the property.

How far, if at all, a trust clearly established, but arising out of the negligent act of the person asserting it, ought to be enforced where the rights of a third person ignorant of the existence of the facts that gave rise to the trust are to be injuriously affected in any manner, it is not necessary to decide. In all cases the person asserting the trust must clearly show both its existence and extent.

We are constrained to hold that the finding of the court below to the effect that appellants had not shown that the property in controversy was bought with their money must be given effect.

In the former disposition of the case the fact that a part of the money paid for the property was the separate estate of Mrs. Gess was not considered, nor, as it now seems to us, was due weight given to the finding of the court below or to the evidence on which it was based.

The judgment heretofore entered in this court will be set aside and the judgment of the court below affirmed.

*Affirmed.*

Delivered February 1, 1889.