### HUNT COUNTY OIL COMPANY v. WINFIELD SCOTT.

Decided February 22, 1902.

**1.—Venue—Fraud—Agent's Representations.**

Where plaintiff in an action to rescind a contract for the purchase of cotton seed and for damages was induced to enter into such contract by false representations of defendant's agent, made in the county of the suit, that the seed so contracted were of the same kind and quality as the sample then exhibited to plaintiff, and such sample was selected by another authorized agent of defendant, there was such a fraud as, under the statute, conferred jurisdiction on the courts of the county where it was so committed, defendant's domicile being in another county; and that the agent who made the representations was acting in good faith did not alter the case in this respect. Rev. Stats., art. 1194, subdiv. 7.

**2.—Same—Plea of Privilege—Issue for Jury.**

Where a plea of privilege to be used in the county of its domicile is interposed by a defendant the court may submit to the jury the issue thus raised along with the issues relating to the merits.

**3.—Contract—Rescission—Damages.**

The plaintiff in an action to rescind a contract may recover what he has paid thereon, with expenses necessarily incurred, but is not entitled, in addition thereto, to recover as damages for breach of warranty as to quality the difference between the contract price and the market value of the property, since by his suit for rescission the contract is annulled.

Appeal from Tarrant.   Tried below before Hon. M. E. Smith.

*McLean, Booth & Morton,* for appellant.

*Capps & Canty* and *Theodore Mack,* for appellee.

CONNER, CHIEF JUSTICE.—Appellee sued appellant, the Wolf City National Bank, resident corporations of Hunt County, Texas, and M. E. Singleton, a resident of Tarrant County, Texas, for the rescission of a contract by appellant for the sale of 500 tons of cotton seed and for the recovery of $2413.91 paid thereon by appellee. It was alleged that appellee was induced to buy through the fraudulent representations of said Singleton, who was acting as the agent of the other defendants, to the effect that the seed sold was of like quality with sample exhibited; that after the shipment of several carloads of the seed and the payment of the above stated sum in part payment on the contract and as freight

charges appellee discovered that the seed shipped were not as per sample, but were wholly worthless; whereupon he immediately "notified Singleton and the oil company of the fact, and instructed the latter not to ship any more seed, and demanded the return of his money already paid on said purchases, which was refused." Appellee also alleged that "the difference in value between the sum agreed to be paid for said seed and the actual value of the same to plaintiff was $5 per ton, aggregating the sum of $2500." The prayer of the petition is as follows: "For judgment against all the defendants, canceling and rescinding the contract for the purchase of said seed, and for judgment for the amount paid out by plaintiff thereon, to wit, the sum of $2413.91, and the further sum of $2500 damages, under the contract as hereinabove set out."

The defendants, Hunt County Oil Company and Wolf City National Bank, each pleaded its privilege to be sued in the county of its residence, and also charged that Singleton had been made a party defendant for the sole purpose of giving jurisdiction to the District Court of Tarrant County, he having no interest in, or liability under, plaintiff's cause of action.

There were other pleas but they need not be noticed. Upon the trial the verdict, in accord with peremptory instruction of the court, was in favor of the Wolf City Bank and Singleton, but upon the evidence and charge was against appellant oil company for the sum of $2913.91 damages, for which judgment was rendered in appellee's favor.

The errors assigned in behalf of appellant on appeal from this judgment relate alone to questions arising out of its plea of privilege and to the measure of damages adopted by the trial court. After careful examination we conclude that the evidence supports the verdict on the issue of personal privilege of appellant to be sued in Hunt County, and that all assignments of error relating thereto must be overruled. It has long been held to be within the judicial discretion of the court to submit this issue to the jury with the issues relating to the merits, and we feel unable to say that the court abused such discretion in adopting such course in this instance. Nor have we found reversible error in the charge of the court in submitting the issue named. The charge was, perhaps, not as perspicuous as it should have been, but we do not feel prepared to say that it was affirmatively erroneous or misleading. The error, if any, was rather one of omission calling for more ample instruction by request, if desired. The issue made by the pleadings and evidence was, in effect, that appellee had been induced to enter into the contract and pay thereon the sums of money alleged upon the false representations made by Singleton, in Tarrant County, that the seed constituting the subject matter of the contract was equal in kind and quality to those exhibited to appellee as a sample. There is no dispute in the evidence that such were the representations made by Singleton to appellee in Fort Worth at the time of the purchase, but appellant seeks to avoid the effect thereof by reason of the fact, also shown, that

the sample exhibited to appellee was selected from the bulk sold by an employe of the appellant company at the instance of its general manager, G. W. Holstein; that this fact was known to appellee and that Singleton was acting alone in the capacity of an agent for the oil company, without remuneration, at Holstein's request. The evidence tends to show that Singleton and Holstein were acting in good faith; but the fact nevertheless remains that the representations were made as charged. That neither Singleton nor Holstein knew them to be false will not legally excuse appellant nor alter the effect of the further proof that the sample was selected by an authorized agent of appellant, and that the statement of such agent as to the kind and quality of the mass from which such sample was selected was, in behalf of appellant company, adopted and reiterated by Singleton and Holstein. If such representations were false, and thereby appellant company acquired and received appellee's money, it constituted such a fraud as conferred upon the District Court of Tarrant County jurisdiction within the meaning of the seventh exception to article 1194, Revised Statutes, conferring upon persons and corporations the general right to be sued in the county of their domicile. The agent who selected the sample denied that the sample exhibited to appellee was the one selected by him from the mass in Hunt County, but the testimony seems overwhelmingly against him on this point, and the sample exhibited to appellee was shown to be so entirely dissimilar and superior to the mass from which it was represented to have been selected as to justify the inference that the selecting agent was either recklessly indifferent to the natural and probable consequences of his acts and representations or that he acted with the deliberate purpose to deceive. In either event the case was more than one of constructive fraud. It was fraud in fact, and Singleton and Holstein were at least instrumentalities through whom the false representations were transmitted and voiced in Tarrant County. Mitchell v. Zimmerman, 4 Texas, 75; McLaughlin v. Shannon, 3 Texas Civ. App., 136; Booth v. Fiest, 80 Texas, 141.

On the other question, however, we are of opinion that the court was in error. The jury were instructed that if they found for appellee they would assess his damages "at the difference, if any, between the price which plaintiff agreed to pay for the seed, and the market value thereof at the time and place of delivery, had they been as good as they were represented to be, and in addition thereto such sum as you believe from the evidence plaintiff has paid defendant on the cotton seed, including freight charges paid."

We think that a consideration of the petition and evidence as a whole unmistakably constitute the case one for rescission of the contract of sale, and that therefore appellee was not entitled to recover the difference of $5 per ton shown by the evidence between the contract price and the market value of the seed as represented in addition to the amounts paid by him on the contract, as charged by the court. While we have been cited to no authority directly in point, we think there is a mani-

fest inconsistency in granting the equitable relief of rescission as prayed for in this case, and at the same time enforcing the express or implied covenant of the contract warranting the kind and quality of the thing sold. Where the right of rescission is sought and established the authorities seem to assume that the measure of damages, as a general rule, is the return of the whole consideration paid, together with such further special damage or expense as may have been reasonably incurred by the party wronged on account of the contract. The Supreme Court of Massachusetts, after thus substantially stating the rule, say: "The reason of the rule is that on a rescission of a contract the contract is avoided ab initio, and the rights of the parties in reference to the subject matter of it are as if no contract had ever been made." Nash v. Insurance and Trust Co., 163 Mass., 574, 28 Law. Rep. Ann., 753. See also, Moreland v. Allison, 19 Texas, 303; Haddock v. Taylor, 74 Texas, 216.

This conclusion would ordinarily perhaps require a reversal of the judgment, but the question as to what is the proper measure of damages is one of law merely, and no matter of fact pertinent to our conclusion on this point is left unascertained or uncertain. The evidence furnishes no reasonable ground for a finding that the cotton seed actually received by appellee were of any value. Appellee's testimony was to the effect that they were absolutely worthless even as a fertilizer, and no serious effort on the part of appellant seems to have been made to contradict this. The evidence is also uncontradicted that from the 3d to the 8th day of March, 1901, appellee paid on the contract and as freight charges the sum of $2413.91. This sum, together with legal interest thereon from, say March 6, 1901, we think appellee's measure of damages in this case, no other special damage having been shown.

We therefore conceive it to be our duty, as prescribed in article 1027, Revised Statutes, to proceed to render such judgment or decree as should have been rendered below, which is that the contract involved be rescinded as prayed for, and that appellee recover of the Hunt County Oil Company the sum of $2454.14, the same being the sum, with legal interest thereon as indicated, paid out by him on account of said contract, together with his costs in the court below. But it is ordered that in other respects the judgment of the District Court be undisturbed, and that the costs of this court be taxed against appellee, and the judgment of the District Court is reformed and affirmed accordingly.

*Reformed and affirmed.*

Hunter, Associate Justice, did not sit in this case.