**BUSH et ux. v. GAFFNEY.**

No. 9555.

Court of Civil Appeals of Texas. San Antonio.

June 12, 1935.

Paul H. Brown, of Harlingen, and Davenport & Ransome, of Brownsville, for appellants.

Carter & Stiernberg, of Harlingen, and Seabury, Taylor & Wagner, of Brownsville, for appellee.

BICKETT, Chief Justice.

This is an appeal by H. W. Bush and wife, Bonnie V. Bush, defendants below, from a judgment rendered against them in favor of Ellena G. Gaffney, plaintiff below, decreeing a rescission of a conveyance of land, awarding a money judgment, establishing a constructive trust, and directing the manner of enforcement of the rights so decreed and adjudged.

The suit was essentially one for rescission upon the ground of fraud, and not a tort action for the recovery of damages for fraud.

This case was previously before this court upon an application for a writ of mandamus. Gaffney v. Kent, 74 S.W.(2d) 177.

H. W. Bush, formerly a resident of the state of Indiana, negotiated the sale to Ellena G. Gaffney, also, formerly a resident of the same state, of three tracts of land, comprising 20, 80, and 20 acres, respectively, in Cameron county, Tex. She paid $1,250 per acre for the first tract, which is not involved in this suit. Subsequently, he represented to her, among other things, that the last two tracts of 80 acres and 20 acres, which are involved in this suit, were of the same quality as the first tract that she had purchased and of a value per acre equal to the price that she had paid per acre for the first tract, that he had the opportunity to purchase 280 acres (of which the last two tracts of 80 acres and 20 acres were a part) at $300 per acre, that he was financially able to purchase only 200 acres, that the owner desired to sell the 280 acres as an entire tract, and that it could be purchased if she would purchase, at least, 80 acres thereof at $300 per acre. As a matter of fact, Bush, or the corporation presently to be mentioned, then had an option to purchase the land in question at $95 per acre, and did purchase it at that price.

Citrus Development Holding Corporation was chartered under the laws of Indiana in April, 1932, the only stockholders being Bush, his attorney, and the latter's stenographer, of whom the last two were merely nominal stockholders. The corporation was dissolved on February 28, 1933, at which time Bush and his wife were the only stockholders. At that time, Bush was the president and his wife was the secretary of the corporation, although she testified that she did not know whether she was a stockholder, director, or officer of the corporation. Upon the dissolution of the corporation, all of its assets were turned over to Bush. Shortly after the institution of the suit and long before the trial of the case, Bush testified upon his ex parte deposition in the most equivocal and evasive manner with reference to the affairs of the corporation. Notwithstanding the inquiries then made of him as to those matters, none of the books, papers, or records of the corporation that might have shown the disposition of the money paid by plaintiff were produced by him upon the trial of the case.

Immediately following the institution of this suit, Bush went to the hotel where Ellena G. Gaffney lived, and there talked with her over the telephone. In her ver-

sion of the conversation, she testified that Bush stated that he had put the money which he had received from her by way of purchase of the 100 acres of land into the homestead upon which he was then living. Bush denied making that statement. He testified that he told her that he thought she owed him an explanation, that she said that she would talk to him in the presence of her attorney, that he replied that she ought to talk to him and owed him an explanation, that she reiterated the suggestion to talk before her attorney, and that he may have told her that the litigation would cost both of them a lot of money. He made no offer of settlement. There was no further conversation between the parties.

The verdict of the jury upon special issues was, in brief, that Ellena G. Gaffney was induced to purchase the last two tracts of land, of 80 acres and 20 acres, by the fraudulent representations of H. W. Bush and Bonnie V. Bush in regard to certain material matters; that H. W. Bush and Bonnie V. Bush used $20,000 of the money paid by Ellena G. Gaffney, as the consideration for the conveyance to her to the two tracts of 80 acres and 20 acres, in the purchase of and improvements on other land, to wit, lot No. 16, survey No. 137, and lots 24, 25, and 26, in survey No. 297, in Cameron county; that the reasonable market value of the last two tracts of 80 acres and 20 acres conveyed to Ellena G. Gaffney was $95 per acre; and that plaintiff was entitled to the recovery of exemplary damages in the sum of $5,000.

The trial court made a finding of fact in the decree that: "Citrus Development Holding Corporation was organized, owned, dominated, controlled, and used by defendant as a mere tool or conduit of title through which the moneys paid by plaintiff for the 100 acres in question passed into the hands of the defendants."

The trial court, also, recited in the decree that the undisputed evidence showed that plaintiff had paid the net sum of $25,821.55, including the amounts paid to defendants or Citrus Development Corporation on the purchase price of the last two tracts of 80 acres and 20 acres, the amounts paid by way of interest, taxes, and traveling expenses, and the amount of interest accrued at the rate of 6 per cent. per annum on all of those items, and deducting the amount of rents received by plaintiff plus interest thereon at the rate of 6 per cent. per annum.

The decree was to the effect: That the conveyances to Ellena G. Gaffney of the last two tracts of 80 acres and 20 acres of land be rescinded, and the title thereto be vested in H. W. Bush and Bonnie V. Bush, and the obligations imposed upon Ellena G. Gaffney by the terms of the conveyances be canceled; that Ellena G. Gaffney recover judgment against H. W. Bush and Bonnie V. Bush for the sum of $25,821.55, the amount found to have been paid (including interest and deducting credits) in connection with the purchase of the 100 acres; that the purchase was made and the money paid by reason of fraudulent representations by H. W. Bush and Bonnie V. Bush; that $20,000 of that amount was used by H. W. Bush and Bonnie V. Bush in paying part of the purchase price of and in making improvements upon other land described as lot 16, survey 137, and lots 24, 25, and 26, survey 297, Cameron county, Tex.; that a constructive trust be established and a charge or lien be impressed as to the property last described to secure Ellena G. Gaffney in the payment of the sum of $20,000; that the charge or lien be foreclosed; and that an order of sale issue to the sheriff or any constable of the county, directing him to seize and sell the particularly described property as under execution to satisfy the sum of $20,000 adjudged; that, if the proceeds of such sale should be more than sufficient to pay the sum of $20,000, the excess should be paid to H. W. Bush and Bonnie V. Bush, or into the registry of the court for their benefit, free and clear of any claim or lien thereon in favor of Ellena G. Gaffney by virtue of the judgment; that execution issue for the sum of $5,821.55; and that any and all writs necessary for the enforcement of the judgment, also, issue.

The trial court did not, by the terms of the judgment, allow any recovery for exemplary damages, despite the finding of the jury of the sum of $5,000 therefor:

H. W. Bush and Bonnie V. Bush make no complaint of legal error in respect to the findings of the jury upon the first thirty-seven special issues, whereby the jury found them guilty of fraud in the sale to Ellena G. Gaffney of the two tracts of 80 acres and 20 acres.

The fiction of the corporate entity will be disregarded if it be shown that the corporation was virtually owned and controlled by one person and was employed

by him as an instrument in the course of the perpetration of a fraud. This was a typical example of a "one-man" corporation, with Bush as the dominant spirit thereof. The payments upon the purchase price of the land were made, directly or indirectly, to the corporation. Bush admitted that he had testified upon a former trial that he received practically all of the assets of the corporation. The corporation was an inseparable link in these transactions, in that the title to the land, which is the subject-matter of this suit, passed to the corporation and thence to Ellena G. Gaffney. The fraudulent representations having been established conclusively, so far as this appeal is concerned, and the employment of·the corporation as the vendor of the lands to Ellena G. Gaffney having been shown without dispute, the trial court, as a matter of law, correctly disregarded the fiction of the corporate entity. There was, therefore, no fact issue to be submitted to the jury with reference to that ˙matter. Continental Supply Co. v. Forrest E. Gilmore Co. (Tex. Civ. App.) 55 S.W.(2d) 622; Pacific American Gasoline Company of Texas v. Miller (Tex. Civ. App.) 76 S.W.(2d) 833; Williams v. Freeport Sulphur Company (Tex. Civ. App.) 40 S.W.(2d) 817.

■■ The trial court did not err in making the supplementary finding in the decree that the corporation was used as a medium through which the moneys paid by plaintiff passed into the hands of defendants. No request was made for the submission of such an issue; nor was its submission required. It is not every question of fact that is required to be submitted to the jury. The court did submit the substantial and inclusive issue, as to whether Bush and wife invested in their homestead the money paid by Ellena G. Gaffney in the purchase of the land conveyed to her. That issue was answered in the affirmative by· the jury. The question as to whether the corporation was used as a medium for the passage of the money was merely an incidental, evidentiary question not necessary to be submitted to the jury. Only the substantial and ultimate issues of fact are required to be submitted to the jury. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

■ The admission of a material, independent fact, not made as a part of bona fide negotiations for a compromise, is admissible in evidence against the party making it. The rule excluding statements made in the course of negotiations for a compromise has its foundation in an implied understanding of the parties that they may fairly exchange their views without prejudice to the end that litigation may be avoided. The conversation between Ellena G. Gaffney and Bush was not one of disarmed candor upon the faith of mutual efforts to effect a compromise. Upon the contrary, the apparent purpose, so far as Bush was concerned, was a demand for an explanation from her as to why, in view of their previous friendly relations, she had sued him. Instead of agreeing to discuss the matter, he refused to do so because of her imposition of the condition that the conversation be in the presence of her lawyer. This proffered suggestion he promptly rejected. There were, therefore, no negotiations or discussions looking to a compromise of the differences between the parties. Accordingly, the conversation is not cloaked with that privilege accorded by the law to negotiations for compromise. The statement testified to by Ellena G. Gaffney as having been made by Bush, to the effect that the money paid by her had been invested in his home, was admissible in evidence. The truth of the statement, affirmed by her, but denied by him, was a matter to be resolved by the jury. Sanford v. John Finnigan Co. (Tex. Civ. App.) 169 S. W. 624; Farmers' State Bank & Trust Co. v. Gorman Home Refinery Co. (Tex. Com. App.) 3 S.W.(2d) 65; Greenleaf, Evidence, § 192.

■ The evidence is amply sufficient to warrant the court in decreeing the establishment of a constructive trust upon the homestead propery of Bush and wife to the extent of the sum of $20,000, found by the jury to have been invested in that property out of the money paid by Ellena G. Gaffney. Mrs. Gaffney delivered to Bush checks aggregating $23,360 in part payment of the purchase price of the two tracts of 80 acres and 20 acres here involved. Some of these checks were made payable to H. W. Bush, and others to Citrus Development Holding Corporation. Those payable to Bush bore his indorsement, and in some instances, also, the indorsement of the corporation; those payable to the corporation bore its indorsement executed by Bush as president. Some of the checks showed an indorsement indicat-

ing a deposit to the credit of the corporation. Although Bush had control and possession of the books, records, and papers of the corporation that would have shown the disposition of its moneys, he failed to produce them upon the trial, in spite of the fact that, on giving his deposition soon after the filing of the suit, he received notice of the necessity for the production of those documents at the trial. The only explanation of Bush as to the origin of the moneys with which he purchased and improved his homestead was his uncorroborated statement that they came from "a fund created in Florida" or from money made by him in Florida. Mrs. Gaffney testified explicitly to the point that Bush stated that he had put the money paid by her into his homestead. Of course, Bush denied making that statement. The jury believed that she was telling the truth, but that he was not. And the evidence is sufficient to sustain the verdict of the jury finding that Bush did invest the money paid by her in his homestead. The decree, with reference to the establishment of a constructive trust, therefore, rests upon a firm basis. Meyers v. Baylor University (Tex. Civ. App.) 6 S.W.(2d) 393; Spencer v. Pettit (Tex. Civ. App.) 17 S. W.(2d) 1102; Andrews v. Brown (Tex. Com. App.) 10 S.W.(2d) 707; Smith v. Green (Tex. Civ. App.) 243 S. W. 1006; First State Bank v. Zelesky (Tex. Civ. App.) 262 S. W. 190; House v. Rogers (Tex. Civ. App.) 23 S.W.(2d) 414; Rogers v. House (Tex. Com. App.) 39 S.W.(2d) 1111; Home Inv. Co. v. Strange, 109 Tex. 342, 343, 195 S. W. 849, 204 S. W. 314, 207 S. W. 307; Zundell v. Gess, 73 Tex. 144, 10 S. W. 693.

■ The several assignments of error and propositions relating to alleged improper arguments are overruled because, although the remarks of counsel may have been improper, it is not apparent, under all the evidence, that they were prejudicial with respect to the answers of the jury to the special issues.

■ The trial court did not err, in respect to issues Nos. 39 and 40, by submitting conjunctively the inquiry as to whether the moneys paid by plaintiff went into the payment of the purchase price and the cost of improvement of Bush's homestead. The matter inquired about was as to whether the money of Ellena G. Gaffney went into the homestead property of Bush and wife; it was immaterial whether the money went into the purchase price of the land or the cost of improvements.

■ A court of equity in decreeing the establishment of a constructive trust may direct the manner of the enforcement of the trust by impressing an equitable charge or lien upon the property, rather than by effecting a division of the property in kind. Bush and wife contend that, since they had invested a total of approximately $40,000 in their homestead property, the court should have decreed a proportionate division of the property according to the respective interests of the parties as determined by the respective amounts of money from each that went into the property. While the court may, in some instances, decree that as the proper and just method of enforcement of the equities of the parties, it is not compelled to pursue that method of enforcement. That suggestion applied to this case would have resulted in the enforced purchase, in effect, by Ellena G. Gaffney, of a part of the homestead tract of Bush and wife—a thing that was not contemplated by her and that might be burdensome to her. The accomplishment of full and exact justice to her appears to have suggested to the trial court that she ought to be made whole and that the only practical method of bringing about that result was to decree the constructive trust and impress the equitable charge or lien against the homestead tract of Bush and wife. There was no abuse of discretion upon the part of the trial court in this regard; upon the contrary, this action of the trial court is supported by the record and confirmed by all proper considerations. Miller v. Himebaugh (Tex. Civ. App.) 153 S. W. 338; Warsco v. Oshkosh Savings & Trust Co., 190 Wis. 87, 208 N. W. 886, 47 A. L. R. 366; Spencer v. Pettit (Tex. Civ. App.) 17 S.W.(2d) 1102; Zundell v. Gess, 73 Tex. 144, 10 S. W. 693; Texas Moline Plow Co. v. Kingman Texas Implement Co., 32 Tex. Civ. App. 343, 80 S. W. 1042; Smith v. Green (Tex. Civ. App.) 243 S. W. 1006; First State Bank v. Zelesky (Tex. Civ. App.) 262 S. W. 190; Gaffney v. Kent (Tex. Civ. App.) 74 S.W.(2d) 177, and cases therein cited.

■ In a suit for the rescission of a sale of land and for the establishment of a constructive trust upon other land, the complainant, upon being awarded the equitable relief sought, is not entitled to

the recovery of exemplary damages. This suit, in its final analysis, became one cognizable strictly by a court of equity, in that it was a suit for a rescission and the establishment of a constructive trust. For a complainant to be entitled to relief in equity, it is necessary that he bring himself within the full meaning of the maxims that he who seeks equity must do equity, and that he who comes into equity must come with cleans hands. These maxims comprehend not only the previous conduct of the complainant toward the defendant, but also the attitude of the complainant toward the defendant throughout the litigation. The complainant must in good conscience offer to do equity and to have the court accord to the defendant all of his rights. Thus, as pointed out in Gaffney v. Kent (Tex. Civ. App.) 74 S. W. 177, and authorities there cited, the defendant may often have his rights fully decreed and protected by a decree in equity, although, if he had been the complainant, he would not have been entitled to appeal to a court of equity for affirmative relief because of his own wrongs. There is no impediment to prevent a court of equity from decreeing full and exact justice to all parties. Now, full restitution has been made to the complainant, and she has been made whole. It would ill comport with the principles of equity for the court to visit upon the defendants a sort of punishment to the pecuniary profit of the complainant and consequent loss of the defendants. A court of equity is a court of conscience, but not a forum of vengeance. It will make restitution, but not reprisals. It will fill full the measure of compensation, but will not overflow it with vindictive damages. The trial court, therefore, did not err in refusing to award a money judgment in favor of Ellena G. Gaffney against Bush and wife in the sum of $5,000, the amount of exemplary damages found by the jury in response to a special issue submitted upon that subject. Karns v. Allen, 135 Wis. 48, 115 N. W. 357, 15 Ann. Cas. 543; Bird v. Wilmington & M. R. Co. (S. C.) 8 Rich. Eq. 46, 64 Am. Dec. 739; Sanders v. Anderson (S. C.) 10 Rich. Eq. 232; Busby v. Mitchell, 29 S. C. 447, 7 S. E. 618; U. S. v. Bernard, 202 F. 728, 121 C. C. A. 190; People v. Small, 319 Ill. 437, 150 N. E. 435, loc. cit. 467; People's Nat'l Bank v. Kern, 193 Pa. 59, 44 A. 331; Norfolk & W. Ry. Co. v. A. C. Allen & Sons, 122 Va. 603, 95 S. E. 406, loc. cit. 412; Witkop & Holmes Co. v. Great Atlantic & Pac. Tea Co., 69 Misc. 90, 124 N. Y. S. 956; Welborn v. Dixon, 70 S. C. 108, 49 S. E. 232, loc. cit. 235, 3 Ann. Cas. 407; Hunt County Oil Co. v. Scott, 28 Tex. Civ. App. 213, 67 S. W. 451; 17 Corpus Juris, 971; 1 Sedgwick, Damages (9th Ed.) p. 727, § 371; 2 Sutherland, Damages (4th Ed.) p. 1272, § 392.

This conclusion is strengthened by the rule of decision in this state, as well as in others, that exemplary damages are not recoverable in an action for breach of contract. H. & T. C. R. Co. v. Shirley, 54 Tex. 125; Hooks v. Fitzenrieter, 76 Tex. 277, 13 S. W. 230; Burnett v. Edling, 19 Tex. Civ. App. 711, 48 S. W. 775; Southwestern T. &. T. Co. v. Luckett, 60 Tex. Civ. App. 117, 127 S. W. 856; Fay v. Parker, 53 N. H. 342, 16 Am. Rep. 270, 271; 17 Corpus Juris, 976.

The foregoing conclusion, that exemplary damages are not allowable in a suit in equity for a rescission and the establishment of a constructive trust, is, however, contrary to three decisions in this state, namely, Oliver v. Chapman 15 Tex. 400; Western Cottage Piano & Organ Co. v. Anderson, 97 Tex. 432, 79 S. W. 516; Id., 45 Tex. Civ. App. 513, 101 S. W. 1061, and Mossop v. Zapp (Tex. Civ. App.) 189 S. W. 979. But the principle involved was not considered in any of those cases. In Oliver v. Chapman, the Supreme Court, speaking through Justice Wheeler, said: "As to the alleged excessive damages, it has been settled by the repeated decisions of this Court, that in actions of this nature, the jury may give exemplary damages; and in doing so, of course, they were not restricted to the amount of damage, which the proof shows to have been actually sustained by reason of the fraudulent acts of the defendant." Apparently the court had in mind the cases where exemplary damages had been allowed in addition to actual damages in cases presenting causes of action for damages, not suits presenting causes of action for a rescission and the establishment of a constructive trust. No prior cases precisely in point upon the question were cited by the court, and none have been found by us. The expression in Western Cottage Piano & Organ Co. v. Anderson upon this subject is rather by way of inference as to what the view of the Supreme Court was than by way of any decision upon the point. That case had gone to the Supreme Court on ap-

plication for writ of error and had been there decided. 97 Tex. 432, 79 S. W. 516. Upon a second appeal, the Court of Civil Appeals, speaking through Judge Speer, stated that the Supreme Court must necessarily have approved the theory of the recovery of exemplary damages in such a suit, otherwise the requisite jurisdictional amount for the granting of a writ of error by the Supreme Court would have been absent. In Mossop v. Zapp this court, speaking through Judge Swearingen, in a rescission case affirmed a judgment awarding a recovery of exemplary damages without discussing the question involved and simply relying upon the expression in Western Cottage Piano &. Organ Co. v. Anderson. It is thus clear that, in the only three Texas decisions which we have been able to discover upon the point, there was no consideration of the fundamental principle involved. Accordingly, we are clearly of the opinion that those three decisions were erroneous in the light of reason and authority, and ought not to be followed.

Ellena G. Gaffney, in presenting her cross-assignment of error and arguing for the allowance of exemplary damages found by the jury in this case, contends, simply, that exemplary damages are the consequence of fraud and bad motive and inevitably follow by way of punishment. But that argument is unavailing in the light of the principles of equity, as shown above.

The only argument advanced by Bush and wife against the allowance of exemplary damages in this case is that exemplary damages cannot be allowed in the absence of recovery of actual damages. And they cite authorities to support that well-recognized proposition. But they overlook the fact that this record does show the allowance of actual, compensatory damages to Ellena G. Gaffney for traveling expenses, taxes, and the like items. However, the allowance of those items of special damages incidental to the principal relief sought and decreed, is of no consequence in determining this issue as to the allowance of exemplary damages in a suit for a rescission and the establishment of a constructive trust. Holland v. Western Bank & Trust Co., 56 Tex. Civ. App. 324, 118 S. W. 218, 119 S. W. 694; Hunt County Oil Co. v. Scott, 28 Tex. Civ. App. 213, 67 S. W. 451; Paschal v. Hudson (Tex. Civ. App.) 169 S. W. 911; Wintz v. Morrison, 17 Tex. 372, 67 Am. Dec. 658; 2 Black, Rescission and Cancellation, p. 1570, § 695; 1 Pomeroy, Equity (4th Ed.) p. 372, § 237.

Article 4004, Revised Civil Statutes of Texas (1925), does not authorize the recovery of exemplary damages in a suit for a rescission and the establishment of a constructive trust. The article reads: "Actionable fraud in this State with regard to transactions in real estate or in stock in corporations or joint stock companies shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract. Whenever a promise thus made has not been complied with by the party making it within a reasonable time, it shall be presumed that it was falsely and fraudulently made, and the burden shall be on the party making it to show that it was made in good faith but was prevented from complying therewith by the act of God, the public enemy or by some equitable reason. All persons guilty of such fraud shall be liable to the person defrauded for all actual damages suffered, the rule of damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract. All persons making the false representations or promises and all persons deriving the benefit of said fraud, shall be jointly and severally liable in actual damages, and in addition thereto, all persons wilfully making such false representations or promises or knowingly taking the advantage of said fraud shall be liable in exemplary damages to the person defrauded in such amount as shall be assessed by the jury, not to exceed double the amount of the actual damages suffered." It is apparent that the statutory right to the recovery of exemplary damages was intended as incidental to the recovery of actual damages sought in a tort action for fraud. The next to the last sentence prescribes "the rule of damages" to be the difference between the value of the property if it had been as represented and the value as it was. That means actual damages for fraud. The last sentence provides that "in addition thereto," that is, only as inci-

dental to and dependent upon the recovery of such actual damages as are just previously defined, exemplary damages are recoverable. There can be no basis for the latter without the former. That this is the purpose and meaning of the act is clear from its caption (Acts 1919, c. 43, p. 77), which reads: "An Act defining what shall constitute actionable fraud in this State, and prescribing a rule for damages to be recovered against persons committing fraud as defined in this Act and declaring an emergency." And so, the act was, apparently, considered in Prideaux v. Roark (Tex. Com. App.) 291 S. W. 868, loc. cit. 871, where it was said: "The defendants in error in their pleadings ask for cancellation, if they are not entitled to damages. Their election to recover damages for the fraudulent acts alleged in the present state of the pleadings binds them only in the event it shall be determined that they are entitled to this remedy. Should it be determined that this remedy does not exist, and only in that event, can they insist on cancellation of the contract of purchase under their pleadings."

The judgment of the district court is affirmed.