Ann Joy Bettis NOLAN, Appellant,

v.

James Jay BETTIS et al., Appellees.

No. 12813.

Court of Civil Appeals of Texas,
Austin.

Feb. 7, 1979.

Rehearing Denied Feb. 28, 1979.

Robert L. Templeton, Templeton & Garner, Amarillo, for appellant.

Milton L. Bankston, J. Stockton Williams, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, for appellees.

SHANNON, Justice.

Appellees, Douglas Dewey Bettis and his brother, James Jay Bettis, individually and as independent executor of the estate of James W. Bettis, Jr., sued appellant, Ann Joy Bettis Nolan, their stepmother, and three Austin attorneys. Appellees' suit sought actual and exemplary damages and an order canceling a trustee's deed to appellant to Skyview Ranch, a three hundred and sixty-one-acre tract of land located in Travis County. After trial to a jury, judgment was entered canceling the deed and awarding appellees damages of $27,000.

Appellant perfected an appeal, cause number 12,624, to this Court from that judgment. Because the judgment was interlocutory, this Court dismissed the appeal for want of jurisdiction. 562 S.W.2d 520 (Tex.Civ.App.1978, no writ).

According to the fact statements in the briefs, appellees' father, James Wallace Bettis, Jr., was married to, but separated from, his second wife, appellant Ann Joy Bettis Nolan, at the time of his death in March of 1973. At that time, appellant's suit for divorce from Bettis was pending. No children were born to Bettis and appellant. By his first wife, Bettis had two sons, the appellees in the present appeal.

Bettis died testate. His will devised practically all of his estate, including the Skyview Ranch, to his sons, and by its terms the elder son, J. J. Bettis, was named independent executor of the estate. Appellant contested the admission of the will to probate. Judgment was entered admitting the will to probate and this Court affirmed that judgment. *Bettis v. Bettis*, 518 S.W.2d 396 (Tex.Civ.App.1975, writ ref'd n. r. e.).

In the suit presently on appeal, appellees asserted fraud and conspiracy as grounds for action against appellant and her attorneys. After our opinion in number 12,624, appellees' claim against the attorneys was severed from their claim against appellant, thereby making the judgment against appellant final and appealable.

The events made the basis for suit occurred during the pendency of appellant's contest of her husband's will. After the will was filed for probate, both J. J. Bettis and appellant made application to the county court of Travis County for appointment as temporary administrator of the estate. After a hearing was commenced, the parties agreed that an order might be entered naming Bettis and appellant as joint temporary administrators of the estate. The order, however, was never entered.

The pleadings reveal that at the death of her husband in March, 1973, appellant was living on the Skyview Ranch. The ranch had been purchased by Bettis prior to his marriage to appellant. At Bettis' death, San Antonio Savings and Loan Association held a first mortgage lien against the ranch for a sum less than $10,000. The market

value of the ranch far exceeded the outstanding indebtedness. Appellant made the April and May, 1973, mortgage payments to the savings association.

The contest of the will was heard in June, 1973, and the county court entered an order admitting the will to probate on July 12, 1973. The order also required that J. J. Bettis, as independent executor, pay to appellant " . . . a sum of money each month, for one year from the date of Decedent's death, equal to the amount of the mortgage payments which are due and payable on the ranch owned by the Decedent."

Appellees alleged that appellant's counsel called upon the executor for payments due appellant for the months of April, May, June and July, 1973, thereby representing to appellees that the payments for those months to the savings association had been made. Appellees pleaded further that the July payment intentionally had not been paid by Mrs. Bettis so as to permit the note to fall into default. Appellant went to San Antonio on July 31, 1973, to negotiate the purchase and transfer of the mortgage to herself. Appellant obtained the transfer of the note and lien on August 2, 1973.

It was further alleged that on or about August 14, appellant appointed one of her attorneys to serve as substitute trustee under the existing deed of trust. On August 14 the substitute trustee prepared notices of foreclosure sale and caused the same to be posted. The substitute trustee on September 4, 1973, conducted a foreclosure sale of the ranch property and struck off the property to appellant at a bid price of eighty-seven cents per acre, a total sum of $300.00. On the same day a trustee's deed to appellant was executed and filed of record.

Appellees alleged that neither appellant nor her counsel notified them or their counsel that the note and debt were in default, or that appellant had purchased the note and lien, or that appellant intended to foreclose. Appellees pleaded that such acts of appellant were intentional and malicious and done in furtherance of a conspiracy to defraud appellees of their rights to the ranch.

The court's charge contained thirty-two special issues. The jury answered, *inter alia,* that appellant failed to give appellees actual notice of the acceleration of the mortgage note and that she failed to make demand upon appellees for payment of the full amount owing on the note. Appellees were not given actual notice of the deed of trust sale. A potential purchaser was present at the foreclosure sale who would have been able to obtain cash for purposes of bidding. The substitute trustee, however, announced at the sale that he would not allow bids unless the bidder produced cash in the amount of the bid at the time of the bid. Because of the substitute trustee's announcement, the potential purchaser did not bid. The substitute trustee failed to allow the potential purchaser a reasonable time to obtain cash for purposes of bidding. The sales price, $300.00, was grossly inadequate for the land, considering its fair market value of $220,000 at the time of sale. The jury answered further that the failure to give appellees notice of the acceleration of the note, the failure to make demand upon appellees for full payment of the note, the failure to give appellees notice of the sale, and the substitute trustee's requirement that the bidder possess the cash amount of his bid, caused or contributed to cause the ranch land to be sold at foreclosure for the grossly inadequate price.

The jury found that appellant secured the transfer of the lien on the ranch with intent to foreclose the lien, and caused the substitute trustee to be appointed with the intent to foreclose the lien, all with the fraudulent intent to deprive appellees of their property rights in the ranch. The jury responded also that appellant, acting individually or through her agents, fraudulently intended to deprive appellees of their property rights in the Skyview Ranch by failing to notify appellees of the acceleration of the note, failing to make demand upon appellees for full payment of the note, failing to give appellees notice of the sale, and failing to request the original trustee to serve under the deed of trust. Appellant or her agents acted fraudulently, according to the jury,

by requiring the bidder to possess the cash amount of his bid and by not allowing a potential bidder reasonable time to obtain cash for purposes of bidding.

In response to the damage issues, the jury answered that appellant acted with malice in seeking to deprive appellees of their property rights to the land and that exemplary damages should be assessed against her in the sum of $25,000. The jury found that $2,000 in damages would compensate appellees for loss of use, resulting from the foreclosure, of 161 acres of the 361-acre ranch.

Pursuant to verdict, the court rendered judgment for appellees for $27,000, for cancellation of the trustee's deed, and for title to be vested in J. J. Bettis, as independent executor of his father's estate, burdened only with the homestead rights of the surviving spouse in 200 acres of the ranch.

Appellant attacks the judgment by thirty-five points of error. Some of the points of error are "no evidence" or "insufficient evidence" points. Appellees argue that this Court must presume that evidence supports the jury findings because appellant filed no statement of facts in the present appeal. *Guthrie v. National Homes Corporation,* 394 S.W.2d 494 (Tex.1965). The basis for appellees' argument is given below.

In appeal number 12,624, which this Court dismissed for want of jurisdiction, appellant filed a transcript and a statement of facts. After this Court dismissed that appeal, the district court, after hearing, signed an order of severance in February of 1978. The entry of the order of severance made the judgment final and appealable. Appellant then filed an appeal bond and perfected the present appeal, cause number 12,813, by filing a transcript with the Clerk of this Court. Appellant never filed, nor tendered for filing, a statement of facts in the present appeal, number 12,813.

Appellant has filed a motion with this Court entitled, "Motion to Deem Statement of Facts Filed." In her motion, appellant argues that the statement of facts filed in the appeal dismissed for want of jurisdiction, number 12,624, should be considered as

also filed in the present appeal, number 12,813. Appellant takes this position even though the statement of facts was not admitted into evidence by the district court as a part of the record in the second proceeding and even though no statement of facts was tendered or filed in the present appeal.

■ An appellate court may take notice of its records for purposes of *res adjudicata,* but an appellate court may not refer to the statement of facts of another case " . . . for the purpose of ascertaining a *fact* not shown in the record of the case before it . . . " (Emphasis supplied by Supreme Court). *Victory v. State,* 138 Tex. 285, 158 S.W.2d 760 (1942). *Accord, State v. Savage,* 105 Tex. 467, 151 S.W. 530 (1912); *Armendiaz v. Serna,* 40 Tex. 291 (1874); *Zarate v. Unknown Heirs of Zarate,* 204 S.W. 697 (Tex.Civ.App.1918, no writ); *Jones Hardware Co. v. Telford,* 63 S.W.2d 735 (Tex.Civ.App.1933, writ dism'd); *Pridgen v. Denson,* 220 S.W.2d 194 (Tex.Civ. App.1949, writ dism'd); *Amco Mesh & Wire Co. v. Stewart,* 474 S.W.2d 740 (Tex.Civ. App.1971, no writ).

The purpose of the rule is to permit an appellate court to protect and effectuate its judgments. The rule allows the court to notice prior judgments, pleadings, issues, identities of parties, and significant filing dates for purposes of *res adjudicata.* Appellant moves this Court to resort to the record (statement of facts) filed in a previous appeal dismissed for want of jurisdiction, not for purposes of *res adjudicata,* but instead to ascertain the existence or non-existence of facts to support a jury verdict, which evidence is not shown in a statement of facts in the appeal under consideration.

■ We admit appellant's argument is attractive in this case because a statement of facts, presumably reporting the entire trial of the cause, is presently in this Court's file room among the papers of another appeal. On the other hand, the orderly administration of justice requires that a properly certified statement of facts be filed with the transcript to insure that the statement of facts reflects all of the pro-

ceedings and all of the exhibits introduced in the trial of the cause on appeal. In such event, the appellate record will contain a statement of facts always readily available for examination by the Court. This is especially important in view of the many appeals that are transferred presently to other Courts of Civil Appeals by the Supreme Court in order to equalize the several dockets. Most important, however, the rule long followed by the Supreme Court requires that appellant's motion be overruled. *Victory v. State, supra; State v. Savage, supra; Armendiaz v. Serna, supra.* Accordingly, in the absence of a statement of facts, this Court will presume that evidence supports the jury's findings. *Guthrie v. National Homes Corporation, supra.*

■ Appellant claims in point of error three that the district court erred in rendering judgment for exemplary damages. The first argument we will consider under the point is that appellees, having sought and obtained equitable relief from the trustee's sale, may not also recover exemplary damages. As authority for that proposition, appellant relies upon *Bush v. Gaffney*, 84 S.W.2d 759 (Tex.Civ.App.1935, no writ). Appellant claims that *Gaffney* " . . . has been cited again and again, and we submit enumerates the general rule that punitive damages are not recoverable in this case where equitable relief is sought." Indeed, it is stated in *Gaffney* that, "[i]n a suit for the rescission of a sale of land and for the establishment of a constructive trust upon other land, the complainant, upon being awarded the equitable relief sought, is not entitled to the recovery of exemplary damages."

According to our search appellant is correct insofar as she states that *Gaffney* has been cited "again and again" (twice) with respect to that proposition of law by the courts of this State. In *Briggs v. Rodriguez*, 236 S.W.2d 510, 516 (Tex.Civ.App. 1951, writ ref'd n. r. e.), Justice Norvell for the same court that decided *Gaffney* wrote, "There is a clear and admitted conflict between *Bush v. Gaffney* and the Supreme Court case of *Oliver v. Chapman*, 15 Tex.

400, upon the question of the recovery of exemplary damages in a rescission suit. Tex.Civ.App., 84 S.W.2d 764. So far as we have been able to find, the Supreme Court has never cited *Bush v. Gaffney* with approval . . . ." The second and most recent citation of *Gaffney* is found in *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 584 (Tex.1963). In *Holloway*, the Supreme Court, contrary to the holding in *Gaffney*, held that, "[i]t is consistent with equitable principles for equity to exact . . . an additional exaction for unconscionable conduct. There should be a deterrent to conduct which equity condemns and for which it will grant relief." We decline to follow *Bush v. Gaffney*.

■ Another argument under point of error three is that the district court was not authorized to enter judgment for exemplary damages in a sum more than double the amount of actual damages. The authority for this proposition is found in Tex.Bus. & Comm.Code Ann. § 27.01 (1968). Section 27.01 provides, in part, as follows:

"(a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a

(1) false representation of a past or existing material fact, when the false representation is

(A) made to a person for the purpose of inducing that person to enter into a contract; and

(B) relied on by that person in entering into that contract; or

(2) false promise to do an act, when the false promise is

(A) material;

(B) made with the intention of not fulfilling it;

(C) made to a person for the purpose of inducing that person to enter into a contract; and

(D) relied on by that person in entering into that contract.

(b) . . . The measure of actual damages is the difference between the value of the real estate or stock as represented or promised, and its actual value

in the condition in which it is delivered at the time of the contract.

(c) A person who wilfully makes a false representation or false promise, and a person who knowingly benefits from a false representation or false promise, commit the fraud described in Subsection (a) of this section and are liable to the person defrauded for exemplary damages not to exceed twice the amount of the actual damages."

An examination of § 27.01 shows that it is concerned with misrepresentation of material fact made to induce another to enter into a contract for the sale of land or stock. Because there was neither a contract nor a sale of land between the parties involved in this case, § 27.01 is inapplicable. As a result, appellees are entitled to their common law remedies. *Stanfield v. O'Boyle,* 462 S.W.2d 270 (Tex.1971). There is no common law rule limiting exemplary damages to double the amount of actual damages simply because real estate is involved.

Appellant also argues under the point of error that the amount of exemplary damages is " . . . excessive, oppressive and bears no reasonable relationship to the actual damages, if any." Exemplary damages should be reasonably proportioned to the actual damages suffered. The ratio must necessarily be determined from the facts of each case in order to determine whether the award was made upon the basis of bias and passion. *Dial Finance & Thrift Company v. Dennis,* 403 S.W.2d 847 (Tex.Civ.App.1966, no writ). In the absence of a statement of facts, we must presume the jury's assessment of exemplary damages was supported by facts and circumstances. *Guthrie v. National Homes Corporation, supra.* Further, we refuse to hold, as urged by appellant, that the ratio between actual damages and exemplary damages in this case is excessive as a matter of law.

Appellant maintains in point of error seven that the district court erred in entering judgment for appellees because appellees failed to make a sufficient, adequate, and unconditional tender of funds.

Appellees tendered two sums into the registry of the court during the course of the trial. One tender was in the sum of $8,632.83, the amount appellant paid San Antonio Savings for the note, and the second was in the sum of $300, the amount of appellant's successful bid at the foreclosure sale. According to appellant's contention, the entire mortgage debt, including principal, interest, late charges, and liquidated damages, was $8,996.43, and not $8,932.83, the total amount tendered by appellees. Appellant marshals many arguments to support her contention that no judgment could be entered in appellees' favor until a full tender had been made.

Appellant, in her trial pleading, voiced no complaint with respect to any inadequacy in appellees' tender. If appellant had made known her objection, appellees could have amended their tender to meet the objection. By failing to make her complaint before trial, appellant waived whatever error there may have been with respect to tender. See *Williams v. Wright,* 20 Tex. 499, 503 (1857). The point is overruled.

Appellant lists points of error six and eight in her brief, but does not supply argument or authority in support of those points. It is settled that points of error are required to be supported by argument and authority, Tex.R.Civ.P. 418(e), and if not supported, the points are waived. *Rayburn v. Giles,* 182 S.W.2d 9 (Tex.Civ.App.1944, writ ref'd); *Ranger Ins. Co. v. Rogers,* 530 S.W.2d 162 (Tex.Civ.App.1975, writ ref'd n. r. e.).

Twenty-five points of error complain of the court's submission of special issues and instructions in the charge or complain of the court's failure to submit requested special issues and instructions. Appellant did not file a formal bill of exceptions and the objections and requests do not appear otherwise in the transcript. The claimed error in the charge and in the court's failure to submit the requested instructions and special issues, therefore, was not preserved for review.

The judgment is affirmed.