ELLA STOCKTON ET AL. v. W. M. CROW.

Decided November 26, 1910.

**1.—Contract—Sale of Land—Power.**

Evidence considered and held insufficient to warrant the trial court in taking from the jury the question of whether or not the son had authority from his mother to bind her in a contract for the sale of her land, and in instructing a verdict against the mother.

**2.—Agency—Proof—Declarations of Agent.**

The authority of an agent, where its existence is questioned, can not be established by showing that the alleged agent so acted, and claimed to have the powers which he assumed to exercise.

**3.—Broker—Land Agent—Commissions—Contract—Evidence.**

Evidence considered, and held to raise an issue of fact which should have been submitted to the jury, as to whether or not a contract was finally made between the owner of the land and his agent as to the amount of the commission which the agent should receive in the event of a sale; and whether or not there was a meeting of the minds of the parties to an exchange of properties so as to make a completed contract; and, if so, whether the defendant, without sufficient cause, refused to consummate the contract.

Appeal from the County Court of Jones County. Tried below before Hon. Jas. P. Stinson.

*J. C. Randel* and *R. W. Harris,* for appellants.

*B. B. Greenwood* and *H. H. Sagebiel,* for appellee.

CONNER, CHIEF JUSTICE.—Appellee instituted this suit against Mrs. Ella Stockton and her son, W. P. Brown, to recover the sum of three hundred dollars alleged to be due as commissions for the sale or exchange of one hundred and eighty acres of land in Haskell County and four lots in the town of Stamford, Texas.

The petition alleged that the defendant W. P. Brown was the agent of the defendant Ella Stockton and as such listed the property mentioned for sale or exchange at a valuation of six thousand dollars, and "agreed to pay plaintiff five per cent of the consideration if a sale or exchange of the property should be effected through the plaintiff"; that through the efforts of the plaintiff "a full and definite agreement of exchange" had been reached between the firm of Haskew & Jones and the defendant Brown acting as agent of Ella Stockton as stated, but that after Haskew & Jones had signed the contract for exchange the defendant Brown refused to sign the contract or to carry out the trade as agreed upon.

The defendant answered, among other things, by a general denial, and Mrs. Stockton specially tendered a verified answer denying the agency of her son as alleged.

Upon the conclusion of the evidence the court gave a peremptory instruction directing the jury to find for the plaintiff W. M. Crow against both defendants for the sum of three hundred dollars, and judgment was entered accordingly.

On this appeal from the judgment stated, error is assigned to the peremptory instruction of the court, and we think the assignment must be sustained. Neither of the defendants testified, and the only evidence that W. P. Brown had any authority whatever from his mother, Mrs. Stockton, to act in the matter was that of the plaintiff, who testified on this subject: "I never did at any time speak to Mrs. Stockton about this deal and never met her until the last term of court here in the trial of this case. She had not at any time told me to trade her land, as I had never seen her; I was dealing with W. P. Brown, who told me to go ahead and make this trade. I had never sent any one to see her about the deal that I know of. I had never talked to Mr. Brown about getting his mother's consent to the trade except that when he listed the land he said that 'we own it,' and I asked him whom he meant by 'we,' and he said, he and his mother. I told him to get her right, and he said that she would be willing to do anything that he was willing to. I don't remember that he ever told me that he talked to his mother about the trade." And that of Mr. Haskew, with whom it is alleged Brown agreed to make the exchange, who testified on this subject that Brown lived with his mother and that "I don't remember Mr. Brown's wanting to 'phone his mother about the deal, or his saying anything about it, nor of his saying that he wanted to see his mother to see if she would make the deed to the land. He said when we first got on the deal that anything he did would be all right with his mother, but that he wanted to go home and talk it over with her. He told me that along at the beginning of the trade."

We think it perfectly apparent that the evidence quoted falls very far short of establishing authority on the part of W. P. Brown to act for his mother. It seems to be assumed in the record that the land listed with the plaintiff was the property of Mrs. Stockton, and it is elementary that the authority of an agent, where the question of its existence is involved, can not be established by showing that the alleged agent so acted, and claimed to have the powers which he assumed to exercise. See Mechem on Agency, sec. 100; Mills v. Berla, 23 S. W., 910; Brady v. Nagle, 29 S. W., 943; M. A. Cooper & Co. v. Sawyer, 31 Texas Civ. App., 620 (73 S. W., 992). The court's charge, however, in effect assumed that the proof on the issue of agency was conclusive, and, in so doing, we think there was manifest error.

Nor do we think the court's charge can be supported in its effect upon the rights of W. P. Brown. The case as made by the pleadings was, as before stated, one in which W. P. Brown, at the time that he listed the land mentioned, agreed to pay plaintiff five per cent of the considera-

tion if a sale or exchange of the properties should be effected. Though the testimony of the plaintiff himself possibly might support these allegations, there was other testimony susceptible of a different construction. For instance, the witness Haskew, with whom the alleged agreement for exchange was made, testified to the effect that he had also listed his property with the plaintiff for exchange, and when informed by Crow that perhaps Mr. Brown would take an interest in his, Haskew's business, that "Brown came around and we talked the matter over, and I went to look at the land, and finally he and I got together on the deal, and he said, 'I believe it suits me all right provided we can go up and fix our commission with Mr. Crow.' We then went up to Mr. Crow's office and talked the matter over with him, and finally decided that the trade was made, and then came down to commission." He further testified that it was finally agreed that each of the parties to the exchange would pay one-half of the commission, one hundred and fifty dollars; that he, Haskew, agreed to give his note for his half of the commission, and in fact executed his note for that amount due thirty days from its date; that Brown first wanted thirty days, then sixty, and then ninety days, but finally insisted on Crow taking a horse and buggy, which Crow refused to do, and thereupon Brown refused to sign the contract for the exchange of properties.

To say the least of this testimony, we think it should have been left to the jury to say whether the contract, on the issue of commissions as finally agreed upon, was as alleged, five per cent. or three hundred dollars, or one hundred and fifty dollars; and whether there was a meeting of the minds of the parties to the exchange so as to make a completed contract, and, if so, whether Brown without sufficient cause or reason refused to make the exchange as finally presented.

We conclude that the judgment must be reversed and the cause remanded for another trial.

*Reversed and remanded.*