J. T. Kelley, M. P. McCoy, and Leo C. Brady, all of Houston, for appellant.

Ernest S. Goens, State's Atty., of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a life sentence in the penitentiary upon a conviction for murder.

The record is before us without bills of exception and no objections were made to the court's charge. There is quite a conflict in the testimony given by the State's witnesses who viewed the murder and the one who testified in behalf of the defendant. However, his own witness testified to nothing that would reasonably excuse the homicide. The evidence, from the standpoint of the State, amply sustains the jury verdict in that it pictures an inexcusable and persistent attack by the appellant in which three serious wounds were inflicted with a knife which produced death in a very few minutes. The appellant pursued his victim several feet across a driveway and stabbed him after he had fallen on some sacks of potatoes. While no contention is made that the evidence is insufficient, appellant has filed a brief in which he lists four "points" upon which he asks for reversal of the case. It has been so frequently held by this court that complaint about the admission of testimony may not be made for the first time before this court, that we do not deem it necessary to cite authority for the holding that such complaints can come only by bills of exception. "Points" have no point in criminal procedure.

For the reasons stated, the judgment of the trial court is affirmed.

## FOOTE v. DE BOGORY.
### Nos. 13482, 13640.

Court of Civil Appeals of Texas. Dallas.
March 24, 1944.

Rehearing Denied April 21, 1944.

984

Bonney & Paxton and Clifford S. Dillard, all of Dallas, for appellant.

Thompson, Knight, Harris, Wright & Weisberg and J. Hart Willis, all of Dallas, for appellee.

YOUNG, Justice.

Appellee's recovery was based upon allegations of an oral agreement, viz.: The storage of his Stinson airplane in a certain hangar owned by defendant Lou Foote, who, without plaintiff's knowledge or consent, moved the plane to another and different place where it was destroyed by fire. A trial to the court resulted in plaintiff's judgment for $3,500, from which appeal has been duly prosecuted.

In addition to fixing above amount as market value of the property, findings of fact by the trial court were: That plaintiff had contracted with Foote, defendant, to store the plane in hangar No. 1 at the latter's aviation field, South Beckley Street, Dallas; and specifically, that it should not be stored in hangar No. 4; that without the consent or knowledge of plaintiff, the plane was stored in hangar No. 4, which, with all contents, was destroyed by fire September 25, 1942, hangar No. 1 not being burned; that storage charges were on a monthly basis, paid by plaintiff from time to time. On motion of defendant the further finding was made that Lou Foote, his agents and employes, were in nowise negligent with regard to the fire and destruction of property in hangar No. 4.

■ Defendant Foote had conducted his school of aviation at the Love Field Base (north of Dallas), but prior to July 1, 1942, had been required by Government order to locate elsewhere, which he did by establishing the South Beckley field. The plane in question had been stored with defendant at Love Field and, as plaintiff testified, he was told by Mr. Lett, defendant's agent, that his plane might have to be moved to the new location; not knowing, however, the date of its actual removal in July 1942. Following is the gist of plaintiff's narrative upon which the instant action is predicated: That later on, he had gone to Love Field for the plane and found it had been taken to the South Beckley port, where he proceeded to go and look for it, through defendant's various hangars (four in number). The time was just after a severe rain and hangar No. 3 was muddy, with water standing in No. 4. The plane was found in hangar No. 1, and here plaintiff's testimony is quoted: "I was a little vexed because they moved it without telling me they were going to move it, and so I talked to the man who seemed to be in charge of hangar No. 1 and I told him that I had a time finding my plane. I says 'I guess it was all right to move it down here but I don't want you to move it over there into hangar No. 4 because it is wet down there and I don't want it in that place.' 'Oh,' he said, 'we will keep it right in here for you in No. 1.' That's where it was then. I says 'Well, I guess that will be all right. My plane is a handsome thing and people get into it and feel of the seat' and I told him to be sure to keep it locked up so people could not get into it and he said he had a key and that he would do that and look after it so I never did fly it out of Beckley Field. One day after that I heard of this fire."

On cross-examination, plaintiff testified that he was led to believe the man he saw in hangar No. 1 was in charge, because "He asked me what I wanted in there and what he could do for me"; and by plaintiff's description, the unknown person was not identified as either of defendant's administrative agents, Lytle or Lett. Plaintiff did not ask the one with whom he dealt his name, having never seen him before or since; stating that he did not know whether such person was an employe of defendant or not. It was further shown that on the same occasion witness talked with Lytle, defendant's maintenance superintendent, not mentioning the matter of keeping said plane in the particular hangar. On such trip, plaintiff visited defendant's administration building, observing that the port maintained some thirty to forty employes.

A part of plaintiff's case in chief was the detailed testimony of defendant Foote and his officials Lytle and Lett; neither identifying as an employe the party who talked with plaintiff at hangar No. 1, nor having knowledge of any arrangement about specific storage. Further defensive testimony was, in effect, that Mr. Lett flew the plane over to Beckley Field, first putting it in hangar No. 3 for an hundred-hour check requested by plaintiff. It was then placed in hangar No. 1 until No. 4 was completed, whereupon outside planes were continuously stored in hangars 3 and 4, school planes in 1 and 2, subject to an occasional shifting; all hangars being of the same size and material-concrete blocks and wooden rafters. Fourteen planes were burned in the fire, all in hangar No. 4, of which three were the property of defendant. At to his operating force, Mrs. Foote was in charge of office and storage, assisted by a Mr. Fidler of the bookkeeping department; Mr. Lytle stating that at time of plaintiff's trip to the Port, conversation related merely to locating a licensed pilot for a proposed trip. .

■ Appellant vigorously assails the court's finding of an express contract to house the plane in hangar No. 1, "since there was no competent testimony in the record to show that the person with whom plaintiff allegedly talked concerning the contract, was an agent with authority to contract, or a servant or employe of the defendant." A careful study of the record convinces us that all points of error should be sustained. Apparent authority of the person with whom plaintiff dealt is not alleged or claimed. Continental Oil Co. v. Baxter, Tex.Civ.App., 59 S.W.2d 463. And admittedly, no contract was made directly with Mr. Foote. Plaintiff's general allegations of liability, therefore, must be construed as charging that such unidentified person was acting for and on behalf of his principal in the instant transaction; Jackson v. Dickey, Tex.Com.App., 281 S. W. 1043; in which connection, the burden was upon him to offer testimony tending to show that the alleged agent had authority, express or implied, to make the contract sued upon. "Persons dealing with an assumed agent, * * * are bound, at their

peril, to ascertain not only the fact of the agency, but the extent of his authority; and, in case either is controverted, the burden of proof is upon them to establish it." Baker & Co. v. Kellett-Chatham Machinery Co., Tex.Civ.App., 84 S.W. 661, 662. Manifestly, such burden has not been met in the present case.

■■ To determine the existence of an agency and incidental scope of authority, courts must look, not to the acts and declarations of the assumed agent, but to the transactions between such person and his alleged principal. Rishworth v. Moss, Tex.Civ.App., 191 S.W. 843; affirmed by Sup.Ct., Tex.Com.App., 222 S.W. 225. Here, plaintiff's evidence in chief (of which above defensive testimony was a part) failed to identify the person described by plaintiff or the nature of his employment; on the other hand, revealed no knowledge or ratification by defendant of any specific agreement for storage. Whether the inference of an existing employment between the unknown person and Mr. Foote persisted in light of defendant's full disclosure (Harper v. Highway Motor Freight Lines, Tex.Civ.App., 89 S.W.2d 448), we need not pause to consider. Even conceding such a relationship, was the agreement in question within the province of such person, if an agent? Or, if a servant, was the special contract for storage within the course of his employment? The statement of facts wholly lacks information in this regard; equally so, relative to the actual duties of the person with whom plaintiff dealt, though we may presume same involved the employer's work in and about said hangar. But "It is not thought that the simple circumstance that an agent is authorized to act for his principal in some unidentified respects tends to prove that the agent has authority to bind his principal in a particular matter in which the agent purports to act for the principal; * * *." Greenville Gas & Fuel Co. v. Commercial Finance Co., 117 Tex. 124, 298 S.W. 550, 552.

■ Appellee points to the statement of the described party that he had a key, as an admission against defendant and proof of agency. As presented in this record, the remark was hearsay and to be disregarded. Authority of an agent cannot be established by showing that he acted as an agent or claimed to have powers of an agent; Stockton v. Crow, 63 Tex. Civ.App. 111, 132 S.W. 952; his declarations, standing alone, being inadmissible for the purpose of establishing or enlarging his powers. "It is the authority to make a statement that renders it admissible against the principal, and to receive such a statement as an evidence of that authority would be to proceed in a circle." Dawson & Young v. Nunn & Latham, Tex.Civ. App., 200 S.W. 603, 604. And the fact that such party was upon defendant's premises and in said hangar was hardly sufficient as evidence prima facie of agency to make inapplicable the foregoing general rule. Webb-North Motor Co. v. Ross, Tex. Civ.App., 42 S.W.2d 1086.

All other testimony, viewed most favorably to plaintiff, merely proves his reliance upon the statement of a presumed agent or servant of defendant, without further evidence of relationship or the duties of such employe, from which authority to make the special agreement may even be inferred. Obviously, aforesaid proof is insufficient basis for the court's finding of liability in breach of contract on part of an alleged principal.

■ Appellee further argues that defendant was obligated to keep his property in hangar No. 1 because located there at time of his visit; hence a bailment for storage in a particular place—a contract by implication. We think the argument is untenable. Appellee here seeks to impose an obligation upon defendant, irrespective of negligence; charging a species of conversion arising from bailee's breach of a special contract to keep the property in a certain place. Thornton v. Daniel, Tex. Civ.App., 185 S.W. 585; Sanchez v. Blumberg, Tex.Civ.App., 176 S.W. 904; Kennedy v. Portmann, 97 Mo.App. 253, 70 S.W. 1099, 5 T.J., Bailment, Secs. 16, 17, pp. 1026–1028; 12 A.L.R. Annotation 1322. Plaintiff's action, to be maintainable, must be upon allegations of an express agreement to that effect; and such was the precise tenor of his petition under which liability is claimed. This cause is reversed and judgment here rendered in favor of appellant Foote.

Reversed and rendered.

### On Rehearing.

■ Appellee's pleading, it is argued, sufficiently raises apparent authority; but if not, that the case should merely be remanded for another trial, so that such may be affirmatively pleaded. The testi-

mony of Col. DeBogory, given the most favorable construction, lacks factual essentials of agency by estoppel; for the record reflects no knowledge or notice by Foote of any acts or conduct on part of said unidentified employe (suggestive of agency), either before or after the agreement relied upon. "The powers which the agent pretends to have, or assumes to exercise, are inoperative as a basis for ostensible authority when the principal is not affected by knowledge of them and does not validate them by acquiescence or assent; and no mere combination of circumstances which may, without the principal's participation, mislead third persons, however reasonably, into a false inference of authority affords a sufficient predicate for apparent authority. That a third person is misled thereby, or reposes a good faith belief therein, is not enough to establish an ostensible power to act." 2 C.J.S., Agency, 1215, § 96. See, also, Continental Oil Co. v. Baxter, supra, and Great American Casualty Co. v. Eichelberger, Tex.Civ. App., 37 S.W.2d 1050, writ refused. We consider appellee's case as having been fully developed and must adhere to disposition thereof in original opinion.

The motion for rehearing is accordingly overruled.