**PASADENA ASSOCIATES et al.,**
**Appellants,**

v.

**Dr. Edwin E. CONNOR et al., Appellees.**

**No. 367.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Nov. 4, 1970.

Rehearing Denied Dec. 2, 1970.

William J. Merrill, Kelley, Ryan & Merrill, Houston, for appellants.

M. W. Parse, Jr., Fulbright, Crooker, Freeman, Bates & Jaworski, Don Jones, Houston, for appellees.

BARRON, Justice.

Pasadena Associates and Pasadena Medical Center, Inc., filed this suit in November, 1966, against Dr. and Mrs. Edwin E. Connor and Walt Childers for the alleged breach of a written contract dated July 9, 1964, to issue or cause a mortgage commitment to be issued for improvements to Pasadena General Hospital in Pasadena, Texas. Plaintiffs' original petition was amended in 1968 and again in 1969 to allege theories of promissory estoppel, fraud and conversion by defendants. The case was submitted to the jury on forty-six special issues covering plaintiffs' four theories of recovery and the Connors' defenses.

The trial court rendered judgment in favor of Pasadena Associates and Pasadena Medical Center, Inc., against defendants for the sum of $5,000.00 plus $15,000.00, less an offset of $500.00, or a total amount of $19,500.00. The trial court, however, pursuant to the findings of the jury, rendered judgment in favor of Dr. and Mrs. Connor on the above-mentioned contract, the jury having found that such alleged agreement between the parties was conditional upon the issuance of a mortgage loan commitment to be obtained by Walt Childers from Tennessee Life Insurance Company or other lender. It is undisputed that no such loan commitment was ever issued or obtained. Plaintiffs had sought recovery against defendants for loss of profits and other alleged resultant injuries based upon the alleged contract, and the jury had found damages totaling $92,420.88 based upon the Connors' alleged liability under such contract.

Plaintiffs have appealed from that portion of the judgment below which failed to award damages in excess of $19,500.00. Defendants, Dr. and Mrs. Connor, have appealed from that portion of the judgment which awarded $19,500.00 against them. The plaintiffs in the court below will be designated in this opinion sometimes as Pasadena Hospital, and the defendants below will be designated as the Connors. Childers did not appeal.

The special issues may be grouped as follows: numbers 1 through 4 pertain to the contract count, and the findings were that Childers was the agent of the Connors and authorized to execute the written contract on their behalf, and that the written contract reflected the agreement of the parties; number 5 found that, independent of the written contract, the Connors orally agreed to provide the $385,000.00; numbers 6 through 9 deal with the alternative plea of promissory estoppel. These are findings that the Connors promised (later found to be a conditional promise) to provide the $385,000.00 for hospital construction and that in reliance on such promise Pasadena Hospital released a $150,000.00 subordination right, paid $5,000.00 to the Connors and demolished certain duplexes. The defense of condition precedent to the Connors' promise is found in special issues numbers 29 and 30, which were predicated on special issues numbers 5 and 6. The defense of mutual mistake as to the authority of Childers, as a loan representative of Tennessee Life Insurance Company, to cause that company to issue a loan commitment is reflected in special issue numbers 31 through 36. The jury found that both Pasadena Hospital and the Connors believed Childers could cause Tennes-

see Life Insurance Company to issue a loan commitment when in fact he had no such authority. The fraud count is covered in special issues numbers 11 to 19 where the jury found that Childers falsely represented that he was a loan representative of Tennessee Life with authority to commit the company with respect to loan transactions; that such misrepresentation was of a material fact and was relied upon by Pasadena Hospital, particularly as to payment of the $5,000.00 and release of the subordination right; and that at the time of the misrepresentation Childers was authorized to act as agent for the Connors in connection with construction of the 40-bed hospital wing. The issue of specific authorization or scope of Childers' authority under the circumstances was not submitted to the jury. Special issue numbers 20 through 21–A found that the Connors converted to their own use the $5,000.00 on January 18, 1965, and converted the $150,000.00 subordination right on March 11, 1965. By special issue number 39 the jury found performance of the basic agreement of the parties was to take place six months from July 9, 1964, and by special issue number 40 the jury found the value of the encroachment waiver given by the Connors to Pasadena Hospital to be $500.00. There were various damage issues which are not material under the circumstances and which make up the total in damages above mentioned of $92,420.88.

In 1957, the Connors sold Pasadena General Hospital and the premises upon which it is located to the plaintiffs, who took the property subject to a first lien securing a $350,000.00 debt owed by the Connors to the Bank of the Southwest, and in addition Pasadena Hospital gave the Connors their note for approximately $815,000.00. This note was secured by a second lien deed of trust in favor of the Connors. That deed of trust provided that in the event the plaintiffs desired to borrow money to make improvements or additions to the hospital, the Connors would subordinate their lien to any lien created by Pasadena Hospital for such purposes up to $150,000.00. The 1957 deed of trust therefore created a $150,000.00 second mortgage subordination right in the plaintiffs.

In late 1963 or early 1964 Pasadena Hospital through Gilbert Gertner, a participant in Pasadena Associates, and the Connors discussed the possibility of adding a new forty-bed wing to the hospital. Since the Connors held the second lien, their cooperation with respect to the financing was necessary. Later, the Connors discussed the matter with Walt Childers who represented himself to be a loan representative of Tennessee Life Insurance Company. Childers apparently proposed that the Connors obtain a $500,000 loan from Tennessee Life or one of its associated lenders for the purpose of paying off the balance of the $350,000 first lien held by the Bank of the Southwest. The Connors apparently believed that this would be a preliminary step to obtaining an additional loan commitment to be used in connection with construction of Pasadena Hospital's new wing. In February, 1964, the Connors gave Childers two checks, one for $10,000.00 and another for $5,000.00, payable to "T.L.I. Escrow Account," upon Childers' representation that these were to cover brokerage or standby fees for the new loan and were required by Tennessee Life before it would issue its commitment. Childers also told the Connors that the company required a $500,000 life insurance policy as a condition to issuance of its commitment.

In April, 1964, Southmore Savings Association, which Childers had led the Connors to believe was associated with Tennessee Life, issued a loan commitment to the Connors in the amount of $500,000.00, which was to be secured by a first lien on the hospital and the note and deed of trust from Pasadena Hospital to the Connors which the latter were to assign to Southmore. Before the proceeds of the $500,000.00 loan were disbursed to the Connors, Childers wrote Jack Laxer, plaintiffs' attorney in New York City, on Tennessee Life stationery stating that the Connors "had applied for and received a loan com-

mitment for a long term loan with us," but that subject to eleven specified conditions, the Connors would apply for an increase in the original loan commitment for an additional amount adequate to cover construction of the hospital's new wing. One condition was that "in order for us to make any commitment on this loan, we will require a waiver of the first mortgage position now held by Pasadena Associates."

A week after Childers wrote this letter, he and Dr. Connor met with Gertner and Laxer on July 9, 1964, in Laxer's office in New York. On that occasion a letter was prepared by Laxer addressed to Tennessee Life and accepted and approved by Childers purportedly on behalf of both Tennessee Life and the Connors. The letter agreement recites: that an application had been made to Tennessee Life by the Connors for a loan; that Tennessee Life would or would cause a lending institution to issue its mortgage commitment for the amount of $385,000.00 in addition to or in conjunction with such other loans which it might have made or would cause to be made to the Connors; that the Connors, upon receipt of such commitment, would personally or through a lending institution make available to the plaintiffs the sum of $385,000.00 for construction of the new wing; that the plaintiffs had waived their $150,000.00 mortgage subordination right; and that the Connors would execute such documents as might be required to permit a recently discovered encroachment by a building owned by Pasadena Hospital upon property mortgaged to the Connors. At the same time this letter was signed by Childers, the plaintiffs delivered to him, in recordable form, a written waiver of their mortgage subordination right. This waiver instrument recited that the Connors had offered the plaintiffs' note and the lien securing the same to Southmore Savings Association as security for a loan to be made by said Association to the Connors, and that since Southmore could not make the loan without Pasadena Hospital's waiver of their subordination right, plaintiffs released and relinquished to Southmore Sav-

ings the subordination right for a period of twelve years. This instrument was dated July 9, 1964, however, and was in anticipation of the financing desired by Pasadena Hospital. Southmore Savings disbursed the $500,000.00 loan, and the disbursement statement shows that approximately $350,000.00 of the loan was used to pay off certain indebtedness of Dr. Connor and the balance then due on the first lien obligation to the Bank of the Southwest (the exact amount of said first lien balance not being definitely shown), that a brokerage or mortgage service fee of $10,000.00 was paid to Southmore Savings and $5,000.00 to Houston First Savings, and that the balance of approximately $132,000.00 went to the Connors. Thereafter, Pasadena Hospital began making quarterly payments on their note to Southmore Savings rather than the Connors.

A loan application for the additional $385,000.00 was made by the Connors to Tennessee Life, Southmore Savings and other possible lenders, but no commitment was ever issued and the above agreement was never carried to a conclusion by reason of Tennessee Life's refusal to make the contemplated loan. In February, 1966, Dr. Connor attempted to secure a loan for construction of the new wing from Republic National Bank in Dallas, but the proposal was rejected by Dr. Connor by reason of the proposed provisions for acceleration of the loan after a period of ten years.

Walt Childers, though representing himself to be a loan representative of Tennessee Life with power to cause that company to issue loan commitments, was actually a life insurance salesman and an independent agent for Tennessee Life. He had no authority to act for the mortgage or loan department of that company. Childers, at times material to this suit, had partnership and other business relations with Dr. Connor and Mr. Gertner and other officials of Pasadena Hospital.

After the Connors learned that a $15,-000.00 brokerage fee had been withheld

from the proceeds of the $500,000.00 loan, Mrs. Connor requested that Tennessee Life reimburse the Connors the money which they had paid to Childers in February of 1964. Tennessee Life returned the Connors' $10,000.00 check uncashed, and the Connors received a $5,000.00 check in a Tennessee Life envelope. A $5,000.00 check dated January 18, 1965 was made payable to the Connors and was drawn on Pasadena Hospital's bank account. On the check stub thereof was a notation "To Reimburse for Standby Fee." The check was immediately cashed by the Connors.

On the other hand, Gertner, the hospital's representative, testified that Childers had called him and told him that the Connors had advanced $5,000.00, that they were in need of money and that a $5,000.00 check from Pasadena Hospital to them would keep the Connors happy and facilitate the proposed loan commitment. Accordingly, Gertner sent Childers a $5,000.00 check payable to the Connors. The Connors have not returned either the check or the money.

A contract to loan money or to finance construction as was the alleged case here, will support an action for damages upon the breach of such contract, much the same as in other types of contract. Lost profits may be recovered as damages in such a case. Also, damages are recoverable of the type for loss of subordination rights, the loss of rent found to be involved, and the total of architect's fees and other items of damage. National Bank of Cleburne v. M. M. Pittman Roller Mill, 265 S.W. 1024 (Tex.Com.App.); Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097. Pasadena Hospital contends that construction of the written instrument of July 9, 1964, there being no ambiguity, presents a question of law, and that in spite of the jury findings in regard to special issues numbers 29 and 30 to the effect that such agreement was conditional upon the issuance of a mortgage loan commitment to be obtained by Walt Childers from Tennessee Life Insurance Company or other

lender, the question must be construed by the court as a matter of law and not by the jury. We agree that construction of this letter agreement is a question of law for the court, and we find no material ambiguity in the agreement so far as the questions here are concerned. Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193, 196 (Tex.Sup.); Brown v. Payne, 142 Tex. 102, 176 S.W.2d 306, 308. Construed from its four corners, the letter agreement establishes that whatever obligations the Connors had to provide Pasadena Hospital with $385,000.00 was conditioned upon the performance by Tennessee Life of its separate and distinct agreement to issue a commitment to the Connors. The issuance of a commitment by Tennessee Life was not merely incidental to the Connors' obligation or a convenient reference point for determining the time at which performance of such obligation was due. Rather, it was the key to the entire transaction. If the Connors were obligated without regard to whether Tennessee Life issued a commitment, there was no reason for the plaintiffs to make Tennessee Life a party to the July 9 agreement or to address the letter to it. If the Connors were obligated unconditionally, there was no reason for Pasadena Hospital to provide as they did two months later on September 10, 1964, that the architect would be paid as money was "advanced by the insurance company lender." The agreement provides that "It is proposed that Dr. and Mrs. Edwin E. Connor, *upon receipt of such commitment* will, personally or through a lending institution, make available to Pasadena Associates, by way of interim financing, the said sum of $385,000.00. * * *" Considering the contract as a whole, it is apparent to us that the Connors were not obligated unconditionally to finance the expansion project involved, but they were to become liable only upon the issuance of a mortgage loan commitment by Tennessee Life Insurance Company or other lending institution. We hold that the agreement of July 9, 1964 was not breached by the Connors on the points here presented.

Pasadena Hospital, however, insists that the Connors are liable because of the fraud practiced upon them by Walt Childers by reason of Childers' representation to plaintiffs that he was a loan representative of Tennessee Life Insurance Company, and that on July 9, 1964 Childers represented to plaintiffs that he had authority to commit Tennessee Life with respect to loan transactions. The jury made such findings, and in addition found that such representations were false and were material to the payment by plaintiffs of the sum of $5,000.00 to the Connors and to the release of the subordination right to the Connors. Plaintiffs contend that the jury's finding in respect to special issue number 13 to the effect that at the time of the representations, Walt Childers was the agent of the Connors in connection with the proposed construction of the 40-bed wing to Pasadena Hospital ties the Connors to the fraud of Childers, and that the Connors are therefore liable for full damages for fraud of their agent. The jury simply found that Childers was the Connors' agent at the time he made the fraudulent representations. This is not enough. A principal is liable for misrepresentations of his agent only when such misrepresentations are authorized or within the scope of the agent's authority. See Reed v. Hester, 44 S.W.2d 1107, 1109 (Tex.Com.App.). Cases cited by plaintiffs so hold. See Chandler v. Butler, 284 S.W.2d 388 (Tex.Civ.App.), no writ; Powell v. Andrews, 220 S.W.2d 718 (Tex.Civ.App.), writ ref., n. r. e.; Wink v. Wink, 169 S.W.2d 721 (Tex.Civ. App.), no writ. The law is clear that a finding of agency alone is insufficient without further finding, actual or implied, that the acts resulting in the injury or damage in question were performed as agent and within the scope of the agent's authority, and it is therefore incumbent upon the plaintiffs to request that these issues be submitted to the jury. See Williamson v. Patterson, 106 S.W.2d 753 (Tex.Civ.App.), writ dismd; Pangborn Corp. v. Jacobs, 368 S.W.2d 852 (Tex.Civ.App.), writ ref., n. r. e.; American Mortgage Corporation v. Spencer, 45 S.W.2d 301, 305 (Tex.Civ. App.), writ dismd; Foote v. DeBogory, 179 S.W.2d 983 (Tex.Civ.App.), writ ref., W.M.

Moreover, on this phase of the case the trial court rendered judgment in favor of the Connors so far as general liability for damages under the contract and for fraud are concerned. The question of Childers' authority or the scope of his authority was not submitted to the jury. The Connors, defendants, objected to the failure of the trial court to submit such issue and their requested special issue was denied. When a plaintiff does not request a jury submission of an issue embracing a component element of his ground or theory of recovery, as in this case, he waives a jury submission thereof, and the trial court may find upon the unsubmitted issue in such manner as it finds the facts to be. Under the circumstances, the trial court is deemed to have found the issue of Childers' "scope of authority" to support the action taken on this portion of the judgment, to-wit: that such representations were not made within the scope of his authority. Rodriguez v. Higginbotham-Bailey-Logan Co., 172 S.W.2d 991, 993 (Tex.Civ.App.), writ ref. Pasadena Hospital's contention is overruled.

We turn now to the appeal of Dr. and Mrs. Edwin E. Connor from the portion of the judgment of the trial court which awarded plaintiffs, Pasadena Associates and Pasadena Medical Center, Inc., the sum of $19,500.00, being $5,000.00 paid to the Connors pending the desired completion of the contract and the sum of $15,000.00 which the jury found to be the value of the mortgage subordination agreement allegedly taken by the Connors pending termination of the contract. The trial court allowed the sum of $500.00 in favor of the Connors by reason of an encroachment waiver given by the Connors to Pasadena Hospital.

The $5,000.00 check dated January 18, 1965 and signed by Pasadena Hospital had noted on the stub, "To Reimburse for

Standby Fee." The evidence shows clearly that the check was intended to reimburse the Connors for a prior advance of $5,000.00, and further, by quoting the testimony of Gertner, the Connors represented that the reimbursement was a part of the obtaining of financing for construction of the 40-bed wing of the hospital. While Mrs. Connor testified that on February 27, 1964 she and her husband paid to Childers and Mr. Weaver $15,000.00 as an application fee for the proposed loan from Tennessee Life Insurance Company, the evidence further shows that such application fee was eventually returned to the Connors, or at least that Childers misappropriated $5,000.00 of the fee. Pasadena Hospital was not involved in that transaction, but it simply advanced $5,000.00 to Dr. Connor at the request of Childers in January of 1965. Dr. Connor admitted receiving the money, and he stated that he refused to return it to plaintiffs because of his expenses to New York in connection with the agreement.

While the parties have generally briefed this matter in terms of fraud and conversion and have cited cases in support thereof principally on said grounds, we believe the above recited facts are not in material dispute and that the Connors are liable to Pasadena Hospital for the advanced $5,000.00 and for the additional $14,500.00 in regard to the subordination agreement. Both items above were paid or delivered to the Connors in an attempt to carry out the written contract of July 9, 1964. The waiver of the subordination agreement was expressly provided for in the written contract, and Pasadena Hospital sent the instrument to Southmore Savings at the request of the Connors to meet the requirements of Southmore Savings for a $500,000.00 loan to the Connors either to pay off the first lien on hospital property, or to obtain interim financing of the proposed construction or both. In any event, Pasadena Hospital lost its subordination rights to Southmore Savings, received nothing for it, and Dr. Connor received the sum of $500,000.00 purportedly in an effort to carry out

the written contract. By special issue number 21–B, the jury found that the loan by Southmore Savings Association to the Connors was not obtained by the Connors for use in connection with construction of the 40-bed wing to Pasadena Hospital.

Thus, it is clearly shown that both items above were released and paid over by Pasadena Hospital to the Connors, or for the benefit of the Connors, in preparation for the closing of the proposed loan with Tennessee Life Insurance Company or other lender, who in fact never made the loan, and the 40-bed wing was never begun. We think that under these circumstances, where the material evidence is undisputed, Pasadena Hospital should be restored the property or the value of property which it parted with under a contract which was never completed and from which no benefits were received. At 44 Tex.Jur.2d, Sec. 77, pp. 750–752, it is said:

"It is a general rule that money paid under a mistake of fact, that is, an unconscious ignorance or forgetfulness of a fact, may be recovered. This is true where, for example, by reason of such mistake a debt has been paid twice, or the amount paid was in excess of the amount due. The reason for the rule is that the payee ought not to retain what in conscience does not belong to him as against the person to whom in conscience it does belong."

See also Hull v. Freedman, 383 S.W.2d 236, 239 (Tex.Civ.App.), writ ref., n. r. e; Capital National Bank in Austin v. Wootton, 369 S.W.2d 475, 477 (Tex.Civ.App.), writ dismd; Davis v. Gonzales, 235 S.W.2d 221 (Tex.Civ.App.), writ dismd.

The rule of restoration which we apply here is not unlike the rule applicable to rescission or cancellation of a contract. A party is usually bound under these circumstances where a contract is never completed to restore whatever consideration he may have received under the contract. See Rigsby v. Boone County State Bank, 241 S.W. 207, 210 (Tex.Civ.App.), no writ;

Groce v. P. B. Yates Mach. Co., 288 S.W. 161, 162 (Tex.Com.App.); Hunt County Oil Co. v. Scott, 28 Tex.Civ.App. 213, 67 S.W. 451, 452, writ ref. We believe the reasonable intendment of the pleadings and Pasadena Hospital's brief and written arguments are sufficient to present properly the matters heretofore discussed.

■ The Connors have pleaded the two-year statute of limitations in connection with the $19,500.00 recovery above. Pasadena Hospital filed its original petition in this case on November 28, 1966. Breach of contract was pleaded in somewhat general terms, but with specific mention of the $5,000.00 advance in connection with a plea of estoppel. Amendments of the original petition were made in 1968 and in 1969 to add pleas, amplify the pleadings and alter the theories of recovery to some extent. However, the amendments were not based upon any new, distinct or different transaction not embraced by reasonable intendment in the original petition.

■ While we believe that this phase of the case is based upon the written contract dated July 9, 1964 and that the four-year statute of limitation applies, if we are incorrect in that ruling we hold that suit was filed in time to prevent the running of the two-year statute, particularly since the jury found that plaintiffs were deprived of the mortgage subordination right on March 11, 1965. We overrule the Connors' contention. See Art. 5539b, Vernon's Ann. Tex.Civ.St.; Leonard v. Texaco, Inc., 422 S.W.2d 160, 163 (Tex.Sup.).

■ The plaintiff, Pasadena Hospital, strongly urges that the doctrine of promissory estoppel as announced in the case of Wheeler v. White, 398 S.W.2d 93 (Tex. Sup.1966) is applicable in this case. That case held in part that the doctrine does not create a contract where none existed before. In the present case the contract of July 9, 1964 existed and was valid and binding on the parties here according to its terms. The plaintiffs cannot disregard the contract and sue for their reliance damages

under that doctrine. The written contract in this case renders the doctrine of promissory estoppel inapplicable. Prince v. Miller Brewing Company, 434 S.W.2d 232, 240 (Tex.Civ.App.), writ ref., n. r. e.

The judgment of the trial court is affirmed.