**GREAT AMERICAN LIFE INSURANCE COMPANY, Appellant,**

v.

**Christina M. LONZE, Appellee.**

**No. 05–89–01486–CV.**

Court of Appeals of Texas, Dallas.

Dec. 31, 1990.

Rehearing Denied Feb. 19, 1991.

Peter A.T. Sartin, George L. Lankford, Dallas, for appellant.

Charles H. Smith, Paula L. Miano, John W. Moore, Dallas, for appellee.

Before HOWELL, ROWE and BAKER, JJ.

## OPINION

HOWELL, Justice.

This appeal arises out of a dispute over commissions due from the sale of annuity contracts issued by the defendant, Great American Life Insurance Company (Company). Plaintiff, Christina M. Lonze, the soliciting or writing or producing agent (Producer) obtained a joint and several judgment against the managing general agent, DPC Financial Planning, Inc. plus its officers and affiliates (Agency) and against Company. This appeal is being prosecuted by Company only. We reverse and render as against Company. The trial court's judgment against Agency remains undisturbed.

The relationships between the parties and the written agreements in question were fairly typical of those within the industry. Company, based in California, desired to sell annuity contracts in the state of Texas. It entered into a general agency

contract with Agency which contemplated that Agency would maintain and operate offices in Dallas. Agency was to recruit, train, and supervise soliciting or writing agents who would call upon prospective purchasers of Company's products. Company reserved the right to reject the services of anyone whom Agency recruited. Agency and its producers were to concentrate on the sale of annuities rather than life insurance. When a producer was recruited by Agency, Agency was required to prepare a contract on Company's forms whereby that producer agreed to act for Company in the sales of Company's policies, subject to the supervision of Agency. The contract was then forwarded to Company at its home office for acceptance by Company.

Company contracted with Agency with respect to the maximum overall commissions that Company was willing to pay. Within certain limitations, Agency was free to make whatever arrangements that it chose with its producers for the division of those commissions. Agency was contractually required to file a copy of all commission-splitting agreements with Company. As might be expected, experienced high volume producers are usually able to obtain more favorable splits than lower volume producers with limited experience.

In the sale of life insurance and related policies, commissions are slow in coming. No commission is payable until the policy has been issued and some part of the stipulated annual premium is paid. Ordinarily, there is a time lapse from one to three months, sometimes longer, between the time that the producing agent commences discussions with the prospect and the time the insurance company has issued the policy, collected the initial premium, and processed the commission check. With respect to life insurance and related policies, it is also contemplated that the policyholder will make premium payments for many years. Commissions are payable, in progressively declining amounts, from so-called "renewal" premiums for up to ten years. In order to assist producing agents in supporting themselves and their families while those producers "build a book," it is commonplace for general agencies to make advances against future commission income.

For these reasons, general agencies often require that producers execute insurance-company-standard-form assignments whereby the company is directed to forward all commissions to the general agent who will, in turn, settle with the producer after the deduction of any amounts advanced. A commission assignment on Company's standard printed form was executed by Producer in favor of Agency.[1] Significantly, that agreement provided that the payment to Agency by Company "shall constitute a full and complete discharge" of Company's agreement to pay commissions.

During the two and one-half year period that Producer was affiliated with Agency, all commission payments were routed through Agency. At the end of that time, Agency terminated Producer. It thereafter refused to pay her any further commissions accruing on policies that had been generated by Producer, contending that, under the agreement between Agency and Producer for the division of commissions, Agency had no liability to divide commissions after Producer had been terminated.

Producer then brought suit concerning unpaid commissions joining both Agency and Company. She alleged multiple theories of liability. The jury found wilful mis-

1. The substantive parts of the assignment read as follows: "FOR VALUE RECEIVED, I, CHRISTINA LONZE, do hereby assign to DESIGNED PLANNING CONCEPTS, its successors or assigns, all my right, title and interest in all first year and renewal commissions now due and payable to me or which shall hereafter accrue and become due and payable to me on business placed with GREAT AMERICAN LIFE INSURANCE COMPANY, under the WRITING AGENT'S AGREEMENT between myself and the said Company dated SEP 20 1984. It is understood and agreed that the above named assignee, its successors or assigns, is hereby authorized to collect said commissions as herein assigned as they accrue and that the payment of said commissions as herein provided shall constitute a full and complete discharge to said WRITING AGENT'S AGREEMENT and that I have made no other assignment thereof." The instrument was executed by Producer, Agency, and Company.

conduct against Agency. It absolved Company from all claims that it also had engaged in wilful misconduct. However, it did find negligence, both ordinary and gross, against Company. Based on the jury's negligence findings, the trial court entered a joint and several judgment in favor of Producer. Company has brought this appeal;[2] Agency has not appealed. As stated, we reverse and render with respect to Company only.

The jury found that Company was negligent in (1) failing to supervise employees or agents to ensure the payment of commissions to Producer, (2) delivering commissions to persons or entities other than Producer without instituting adequate procedures for the supervision or control of payment of such funds to Producer, and (3) failing to require implementation of an adequate accounting system for receipt and payment of commissions owned by Producer.

Our analysis commences with the proposition that duty is the threshold inquiry in a negligence case; a plaintiff must prove the existence and violation of a duty owed by the defendant in order to establish liability in tort. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). Duty may be imposed by contract or by law. *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231, 234 (Tex.App.—Dallas, writ ref'd n.r.e.). Where no duty exists, no liability based on negligence can arise. *R.J. Reagan Co. v. Kent*, 654 S.W.2d 532, 533 (Tex.App.—Tyler 1983, writ dism'd).

■ Producer argues that tort liability can arise from the negligent performance of a contract. *See Montgomery Ward v. Scharrenbeck*, 146 Tex. 153, 157, 204 S.W.2d 508, 510 (1947). We do not disagree. However, we fail to find where

Company contracted to pay any commissions except through Agency; it is undisputed that the full amount of all commissions that became due and payable were remitted to Agency. Company did not undertake to supervise Agency. To the contrary, it was contractually provided that payment to Agency would constitute a full and complete discharge of Company's commission obligations. By necessary implication, the assignment provided that Producer would look only to Agency for her share of commissions falling due.

Producer further cites the Restatement of Agency, providing that a person conducting an activity through agents is subject to liability if he is negligent in supervising the activity or in failing to make proper regulations. RESTATEMENT (SECOND) OF AGENCY § 213 (1958). In our view, this provision only refers to the activities of an agent in the exercise of his powers *as an agent*.[3] Agency was not exercising its powers *as an agent* for Company in dividing commissions with Producer. This was a matter of private contract between Agency and Producer. Company had no particular interest in the manner in which these parties contracted for the division of commissions between themselves. Furthermore, at least as between the principal and the agent, agency is a relation that is created by contract. These parties created the agency relation through written contracts. The right of the agent to demand compensation from his principal, for the agent's exercise of the powers granted, is governed entirely by contract. Even if we should decide that Company retained Agency as an agent to act for Company for the purpose of effectuating the payment to Producer of any commissions that Company might be obligated to pay to Producer, we still must decide if it was lawful for

2. Company asserts that California law is applicable to this case. However, our reading of the record reveals that the trial court ruled that Texas law would apply. On appeal, Company does not assert that this ruling was erroneous. Therefore, the error, if any, has been waived. *See Prudential Ins. Co. v. J.R. Franclen, Inc.*, 710 S.W.2d 568, 569 (Tex.1986) (per curiam). Neither do we find the California decisions urged by Company to be particularly apposite.

3. Thus, section 213 visits no liability on an insurance company for the negligence of a producer in colliding with a third party while the producer is on his way to visit a prospective customer. Inasmuch as the producer would not be exercising the power of his agency in driving an automobile, liability in that instance must stand or fall according to the law of respondeat superior, not agency.

Company to contractually provide that Producer would look only to Agency for her commissions. We hold the contractual provision to be lawful. Beyond doubt, in the face of the provision in the contract of assignment, Producer had no grounds to bring suit against Company for *breach of its contract* to pay commissions for policies generated by Producer. By the same measure, Company could contractually limit liability for the defalcations of its alleged agent acting for it in the distribution of commission money.

Imposition of a duty upon Company to supervise Agency's payment of, or accounting for, commissions would effectively override the parties' unambiguous agreement. When contractual provisions preclude imposition of a duty on a contracting party, that party cannot, in general, be liable for failure to perform the asserted duty. *See Allied Bank v. Plaza DeVille Assocs.*, 733 S.W.2d 566, 568–71 (Tex.App. —San Antonio 1987, writ ref'd n.r.e.). Producer's argument represents nothing other than an effort to disavow her contract; such is impermissible.

■ Producer urges in two counterpoints that Company was liable as a matter of law for the negligent and fraudulent acts of Agency. We do not agree. It is elementary that in order to hold one person responsible for the tortious acts of another, it must be shown that the latter was the agent of the former *and was acting within the scope of his employment. Moreland v. Leslie*, 140 Tex. 170, 174–75, 166 S.W.2d 902, 904 (1942). As to either negligent or willful torts, the determination concerning the principal's liability for the agent's acts turns upon the question whether the agent was acting within the scope of his authority. *Magnolia Petroleum Co. v. Guffey*, 129 Tex. 293, 296, 102 S.W.2d 408, 409 (1937); *see Geders v. Aircraft Engine and Accessory Co.*, 599 S.W.2d 646, 650 (Tex. Civ.App.—Dallas 1980, no writ). Thus, for example, a principal is generally liable for the misrepresentations of his agent only when such misrepresentations are authorized or within the scope of the agent's authority or when the principal has otherwise participated in the fraud. *Pasadena Assocs. v. Connor*, 460 S.W.2d 473, 479 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.); *Ross v. Seip*, 154 S.W.2d 958, 961 (Tex.Civ.App.—Texarkana 1941, writ ref'd w.o.m.).

The record falls short of *conclusively* establishing vicarious liability. Much of Producer's argument is based simply upon the overall agency relationship between Company as insurer and Agency as agent for the purpose of recruiting and directing sales persons such as Producer, ignoring the additional requirements for imposition of vicarious liability.

We again assume, without deciding, that Agency was acting as the agent for Company in paying commissions to Producer. However, the fact of agency alone is insufficient for holding the principal liable for the agent's *conduct. Connor*, 460 S.W.2d at 479. In order for Producer to hold Company liable for any fraudulent or negligent *conduct* of Agency, the record must conclusively show that the wrongful acts of Agency were authorized by Company or were undertaken within the scope of authority granted to Agency. We have searched in vain for such conclusive evidence; Producer has not pointed us to anything in the record that establishes *as a matter of law* that Company either authorized or participated in Agency's wrongful conduct or that Agency's conduct was within the scope of its authority as agent.

■ Producer also asserts vicarious liability based on ratification of Agency's wrongful acts. Ratification of an agent's wrongful conduct may occur when the principal retains the benefits of the transaction after he has acquired knowledge of the agent's wrongful act. *Land Title Company v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex.1980). However, the record simply does not show ratification as a matter of law. It is undisputed, for example, that Company did not receive or retain any commissions that were due and owing to Producer; Company paid them all to Agency, and Agency kept them in their entirety. Producer seeks to establish ratification through the fact that Company failed to

take her side in her dispute with Agency. Such conduct did not conclusively establish ratification. The very fact that the wrongful nature of Agency's conduct was the subject of dispute tends to negative ratification. Because vicarious liability was not established as a matter of law, we overrule the counterpoints.

 Producer urges us to find a duty on the part of Company to supervise the distribution of commissions to soliciting agents. Producer argues that it is not uncommon for unscrupulous general agents to utilize assignments such as the one reflected by the record to cheat agents who solicit and produce the sales of policies. She argues that, through the assignment device, general agencies can develop a means to keep producers in the dark as to the total amount being paid by insurance companies for the production of business. According to her contentions, producers are inhibited by the assignment device in their ability to bargain with general agents for compensation. In the trial court, Producer presented expert testimony in support of her contentions. Perchance her complaints are well founded. However, we respectfully decline the invitation to engage in judicial activism. The evil complained of, if it exists, is more properly the subject of inquiry and correction by the legislative and regulatory arms of government.

In sum, we hold that all of Producer's multiple theories of liability on the part of Company are precluded by Producer's execution of the contract of assignment providing that payment to Agency would be "a full and complete discharge" of any liability of Company to pay commissions to Producer. Having accepted the benefits of the contract for two and one-half years, she complains that it was over-reaching. Even should we agree, we cannot give relief on such grounds. She does not allege lack of consideration. She does not complain that Company misrepresented the contract to her or even that Agency made any specific misrepresentation to her as to the terms or effect of the contract of assignment. Without legal excuse for the willing and voluntary execution of that contract, she may have no relief in derogation of that contract.

We reverse and render in favor of Company. As against Agency, the judgment of the trial court is undisturbed.